## MORRIS v. MORRIS.

[No. 13,836. Filed May 16, 1930. Rehearing denied July 30, 1930. Transfer denied January 6, 1931.]

*Bernard Stroyman,* for appellant.
*Jesse E. Martin,* for appellee.

REMY, C. J.—May 5, 1922, the parties to this appeal, then husband and wife, were divorced on complaint of appellee; as a part of the decree, appellee was given the custody of their child John Robert Morris, Jr., then nine years of age, and alimony in the sum of $9,500, payable in monthly installments of $100; a further provision of the decree was that appellant should pay to appellee, until further order of the court, the sum of $50 per month for the support of the child.   Thereafter, in May, 1929, appellant filed with the court which had granted the divorce his petition, in which is set forth, in addition to facts above stated, that, after the divorce, he remarried; that his family now consists of his wife and her two minor children by a former marriage; that his gross annual income from his business, that of wholesale coal

dealer, is not so good as when the divorce was granted, and is from $3,000 to $3,500, out of which he is required to pay the monthly installments of alimony to appellee; that, outside of his coal business, he has no income and no property, and is not financially able to continue the payments for the support of his son John Robert Morris, Jr., who has arrived at the age of 17 years, has completed the high-school course of the public schools, is physically and mentally strong, and well able to support himself. Prayer, that petitioner be relieved from making further payments toward the support of the minor son, and that the decree be so modified.

To the petition, appellee and the son entered appearance and filed answer in denial. Appellee also filed a special answer setting up that the minor, still in her custody, "is desirous of entering college in the fall of 1929 to continue and complete his education, and that fifty dollars per month is necessary to meet the expense incident to his attendance at college; that, if the judgment in this cause be modified and defendant relieved from the further payments as prayed for in his petition, said minor child will be unable to enter college as he desires, and, to support and maintain himself properly, will be compelled to go to work."

On a trial of the cause, there was competent evidence to establish the facts set forth in appellant's petition; also the material averments of appellee's special answer. From a judgment denying the petition, this appeal is prosecuted.

There is but one question involved in this appeal: Under the facts, did the court have the right to require appellant to provide funds to defray the expenses of a general college education for his son.

It is fundamental that the legal duty of a father to provide for his minor child is confined to necessaries. It

is also well established that necessaries, as applied to the duty of a father toward his minor child, is a relative term, its scope depending upon the station in life of the parties, and is to be determined in each instance from the particular facts and circumstances.

That a good common-school education is a necessary to which a child is entitled at the expense of its parent is not controverted by appellant, nor can it be.

The question presented, though new in this state, has been considered by courts of other jurisdictions. The leading case is *Middlebury College* v. *Chandler* (1844), 16 Vt. 683, which was an action to recover from a father of a minor son certain expenses incurred by the son in procuring a college education. After stating that a common-school education is a necessary which it is the legal duty of a parent to furnish his child, the court, in the course of its opinion holding a general college education not a necessary, used this language: "But it is obvious that the more extensive attainments in literature and science must be viewed in a light somewhat different. Though they tend greatly to elevate and adorn personal character, are a source of much private enjoyment, and may justly be expected to prove of public utility; yet in reference to men in general they are far from being necessary in a legal sense. The mass of our citizens pass through life without them. I would not be understood as making any allusion to professional studies, or the education and training which are requisite to the knowledge and practice of the mechanical arts. These partake of the nature of apprenticeships, and stand on peculiar grounds of reason and policy. I speak only of the regular and full course of collegiate study." We concur in that view. A general college education, however desirable it may be, is not a necessary. The holding

of a court of review that it is, might make it the law within the court's jurisdiction, but it would not change the fact. It is well known that there are worthy parents in all parts of the country, with sufficient means to do so, who do not send their children to college. We cannot say that each of them has failed in a legal duty to his child and to the state. It cannot be doubted that the important part of the education of a young man or woman is the building of his or her moral character, and not higher learning, desirable as it may be. Many parents may conclude that it is best for their children's education that they earn the money for their higher education. The legislative branch of our state government has enacted no statute making it the legal duty of a parent to give his minor child a college education, and this court will not hold that it is the duty of a parent to provide such education, under the guise that it is a necessary.

Our attention has been called to the case of *Esteb* v. *Esteb* (1926), 138 Wash. 174, 244 Pac. 264, in which case, it is contended by appellee that the Supreme Court of Washington reached a conclusion contrary to that of the Vermont Supreme Court in the Middlebury College case. An examination of the facts in that case will disclose that they are not the same as in the case at bar. The question there involved was whether a divorced father whose minor child was awarded to the mother by a divorce decree, and who is financially able to do so, is under a legal duty to furnish such minor child training for a vocation for which she had shown herself to be especially adapted, and which training would enable her to earn her living. That is not this case. It may be that under the peculiar facts of the Esteb case, the conclusion of the Washington Supreme Court was right, but the reasoning of the court in its opinion, to which one of the judges dissented, does not meet our approval.

Whether it is the legal duty of a parent to furnish his

minor child means with which to procure educational training, in preparation for a chosen vocation for which the child has a peculiar aptitude, is not involved in this case and need not be considered.

We conclude that, under the facts disclosed by the record, and which we have stated above, the trial court was without authority of law to require appellant to provide funds to defray the expenses of a general college education for his son, and that the court erred in refusing to modify the former decree in accordance with appellant's petition.

Judgment reversed, with instructions to grant a new trial.