## ATCHLEY v. ATCHLEY.—194 S. W. (2d) 252.

Eastern Section.   November 6, 1945.

Rehearing denied January 8, 1946.

Petition for Certiorari denied by Supreme Court, May 4, 1946.

O. M. Connatser, of Sevierville, for plaintiff in error.

E. E. Creswell, of Sevierville, for defendant in error.

BURNETT, J. This suit was filed by Mrs. Atchley against her divorced husband to recover sums expended by her in sending their daughter to college.

The parties were divorced in 1938. The custody of the daughter was not awarded to either parent. Apparently the court granting the divorce decided that the daughter was of sufficient age and discretion to decide for herself which of the parents she chose to live with. She chose her mother with whom she has resided since the divorce. The daughter graduated from high school and entered Carson-Newman College in February 1942.

The mother was working as a cook, in a canning factory, as a laundress and in various honorable ways paid this daughter's tuition and expenses at college. The daughter assisted materially in the payment of her expenses by waiting on tables and other work she secured at college. At the same time she was putting in four years work in three—she attended college the full twelve months.

As this suit now stands it seeks recovery only for that expended by the mother up until the filing of the suit on February 19, 1944. An exhibit to the declaration which is substantially supported by the proof shows that the mother spent for the years 1942 and 1943 the sum of $737.49. During this period the father gave his daughter the sum of $246.42. During the same period the daughter earned at college the sum of $144.72 which was credited to her account.

In the four years between the separation of these parties and the entry of their daughter in college the father voluntarily gave his ex-wife and daughter $2,000. This was apparently done so that the daughter might have a high school education. When the daughter graduated from high school she was eighteen years old. The father seems to have had the idea that he was no longer responsible for her maintenance, etc., after she ·reached her eighteenth birthday or that he need not send her to college. He makes no direct assertion on the subject. The daughter says: ''He didn't feel like he could, from all I gathered. I ask him to give me enough for at least half of it. Sorty talked like he might but yet he never did.''

We are well aware of the well-established rule that: ''The law presumes that the father will provide for his child, of which he has custody, education in that vocation for which it is best fitted, and unless his parental authority has been taken away by the courts, he is ordinarily the one to decide the extent of the education of child, beyond what is required and provided by the school system of the state.'' 39 Am. Jur., sec. 49, page 681.

■ We have no complaint with the rule and think it certainly should be applied to a proper case. Should the rule and attendant presumptions be applied when the

custody of the child has been in the mother, by choice of the child? It seems to us that the mother being in daily contact with the daughter, and knowing her talents and abilities, should be the one to determine what education she should have. It is a national presumption for us to persume that since the daughter had selected the mother as the one she chose to live with, as opposed to the father, that the father would refuse to do for the daughter what the natural instincts of a parent would ordinarily prompt him to do. The mother is apparently a woman of very limited education. She though is ambitious and desirous of having her daughter attain a higher educational and social standard than she (the mother) had. She shows the natural instinct of a living and thoughtful parent in trying to give the daughter every advantage so that the daughter might go farther and be more than the mother— an education so that the daughter would not have to work in canning factories and do laundering for a livelihood.

Code section 8463 provides in substances, says Judge Green, that:

"The obligation for the support of a minor child is no longer primarily charged upon the father, but father and mother are equally and jointly charged with the child's care, nurture, welfare, education, and support. This statutory provision was considered by the court in Brooks v. Brooks, 166 Tenn. 255, 61 S. W. (2d) 654. In that case it was said:

" 'The obligation previously resting upon the father to maintain and support his minor children cannot be said to have been destroyed by this statute. That obligation was to provide for the child *"in a manner commensurate with his means and station in life."* Evans v. Evans, supra [125 Tenn. 112, 140 S. W. 745, 747, Ann. Cas. 1913 C, 294]. The obligation cast upon the mother by the statute must

be measured by the same varying and relative standard. It is obvious, therefore, that the "equal and joint" obligation imposed upon both parents cannot be divided between them by arbitrary or mathematical measure. The obligation of both to provide a support for their child is equal and joint, in so far as the child is concerned, but a controversy between the parents, as to the proper contribution of each, seems to us to be determinable only by equitable principles and rules, due regard to the condition and means of each.' " (Emphasis ours.) Rose Funeral Home, Inc. v. Julian, 176 Tenn. 534, 539, 144 S. W. (2d) 755, 757, 131 A. L. R. 858.

█ The father is a prosperous business man of Sevierville. He has a lumber plant and a furniture plant and owns real estate. In the three and a fraction years prior to his daughter's entering college, he gave her and her mother in excess of $2,000. The father makes no attempt to show that he is financially unable to bear any or all of this college expense. His business and financial condition are clearly within his knowledge. The mother has no means of showing these matters—he at least is in a better position to do so and he does not. We think that under this record we must assume that the father is financially able to bear this expense. On a very similar question it was said in Jackman v. Short, 165 Or. 626 109 P. (2d) 860, 864, 133 A. L. R. 887, that: "Most men are able to support their children. They willingly change from a non-profitable to a profitable occupation if necessary; they resort to borrowing, to self-sacrifice; they stint themselves, and even go hungry before subjecting their children to want. This being true, and the opposite being almost a phenomenon, we have the basis for a strong inference that the defendant, in the absence of some unusual circumstances,

must have the means to provide for his children. Ordinarily, women who are taking care of the home and children (like the plaintiff's three) have no time to familiarize themselves with the earning power of the husband's business, and therefore when his financial affairs become the subject of judicial inquiry, as in the present case, they can not produce extensive data concerning them. But the husband can and is subjected to no unfair disadvantage when required to do so.''

In Jackman v. Short, supra, Mr. Justice Rossman in a very able opinion reviews and analyzes many cases on the subject here involved. He concludes: ''Whether as necessaries within the contemplation of the common-law rule, or as a provision for education within the purview of our statute, we believe that awards for a college education made in behalf of a child displaying sufficient capacity are permissible. Reason, as well as the public policy of this state, favorable as it is to higher learning, permits no other conclusion. The high esteem in which college training is held in this state is unmistakably indicated by the numerous colleges found in the various part of this state. Ordinarily, a child of divorced parents is in greater need of the help that a college education can give than one living in a home where marital harmony abides.''

The thought and reasoning in the above-quoted quotation is particularly applicable under the statutes and conditions in Tennessee.

Almost two centuries ago Blackstone stated the same legal principle. See Blackstone's Commentaries. Lewis's Ed., p. 424. The purpose of the education of minors and the legal principle above announced is also well stated by Schoulder in his work on Domestic Relations, section 774.

■ The trial judge rendered judgment in favor of the mother for $550. This is approximately one half the costs incurred by the mother for 1942 and 1943. Under the facts of his case as herein set forth and our statute and authority hereinabove referred to, we think this a very just and equitable judgment.

Judgment must be affirmed with all costs.

Hale and McAmis, JJ., concur.

## On Petition to Rehear.

BURNETT, J. The petition to rehear this cause is based on three propositions. The first and third really go to the single question of whether or not the plaintiff-in-error is financially able to bear a portion of his daughters's college expenses. We discussed these questions at length in our original opinion and for the reasons there expressed reached a contrary conclusion to the petition now filed.

It is true the petitioner concludes, without any evidence to support said conclusions, that he was not able (financially) to send his daughter to college. Shortly after making this concluding statement he reluctantly admits on cross-examination that he has and owns the properties set forth in our original opinion. He does not offer or attempt to elaborate thereon by showing their worth, earning power, etc.

The second assignment is that the "trial court had no jurisdiction to try the cause" because the declaration was not filed in time.

Suit was begun by summons filed on the 29th of February, 1944. No declaration was filed until November 6, 1944. Meantime an order was entered allowing ten days

additional time in which to file the declaration. The declaration was not filed within the ten days. A motion to strike the declaration and dismiss the suit was seasonably filed. This motion was argued and overruled and the case went to trial on declaration, answer (filed after the overruling of the motion), and proof offered by both sides.

██ The record does not show why or what the reasons of the trial court were in overruling this motion. Clearly it is within the trial court's discretion. There is nothing to show this discretion has been abused. For a very clear and well-reasoned opinion on a related subject see Whitson v. Southern Ry. Co., Tenn. Sup., Oct. 13, 1943, 189 S. W. (2d) 823.

For the reasons expressed the petition must be overruled with costs.