DORMAN v. DORMAN.

[No. 768S108. Filed October 18, 1968.]

*Donald R. Ewers,* and *Schnatter and Ewers,* of Jeffersonville, for appellant.

*Howard J. Snyder* and *Pointer, Snyder, Paynter and Risinger,* of Jeffersonville, for appellee.

LEWIS, C. J.—This is an appeal from the judgment of the Clark Superior Court in a proceeding brought by the appellant, John Dorman, to modify a divorce decree. The appeal was originally taken to the Appellate Court of Indiana and was transferred to this Court pursuant to Burns' Indiana Statutes, Anno., (1968 Repl.), § 4-214, and Supreme Court Rule 2-41 (1967). *Dorman* v. *Dorman* (1968), 143 Ind. App. 94, 238 N. E. 2d 492.

On June 16, 1959, the Clark County Circuit Court awarded appellee Edna Dorman a divorce from appellant John Dorman. The parties' three children, aged 10, 9 and 4 years, were placed in custody of the appellee mother, with support awarded in the sum of Fifty Dollars per week to be continued until the children attained the age of Eighteen years, and then such sum to be reduced proportionately as each child attains such age. Subsequently, on November 7, 1961, the Circuit Court of Clark County reduced the support to the sum of Forty Dollars per week. On July 1, 1967, appellant filed a petition to modify the divorce decree asking that the support payment be reduced proportionately in that two of the children

had reached the age of Eighteen years. On July 24, 1967, appellee filed a petition to modify the divorce decree, asking that the support payments be continued in that the two children were attending Indiana University.

The testimony given at the hearing on these petitions to modify the divorce decree was not recorded. Upon motion by the appellant, the Trial Court made the following findings of fact:

"1. Mary Lynne Dorman reached the age of eighteen (18) on July 23, 1966, and Alice Jane Dorman reached the age of eighteen (18) on August 19, 1967.

2. Both . . . have high academic grades and are college material. Both are honor roll students.

3. (Both) . . . have received scholarships which cover the entire cost of their school tuition.

4. Alice Jane Dorman is employed full-time during the months of June, July and August at a salary of $49.00 per week and is employed part-time during the months of September through May at an average weekly wage of $21.00.

5. Mary Lynne Dorman is employed during the months of June, July and August and earns $56.00 per week.

6. John Dorman is steadily employed with an average weekly take-home salary of $75.00 per week.

7. John Dorman has paid the sum of $40.00 per week pursuant to the Order of this Court and is current as of this date.

8. In addition to $40.00 per week support, John Dorman pays the insurance premium on his children's life insurance in the sum of $5.21 per week."

Subsequent to the hearing on the petitions, the Clark Superior Court entered the following order:

"It is therefore considered, ordered and adjudged that the defendant, John Dorman, pay support in the sum of $40 per week from the beginning of September until the end of May each year, and that he pay support in the sum of $20 per week for the remainder of the year and that said schedule of payments be in effect so long as the two older

children of the parties are full time college students and until said children reach the full age of 21 years, or upon completion of the requirements for a baccalaureate degree, or are married, whichever occurs first, and at which time said support shall be reduced to the sum of $20 per week year round."

Appellant assigns as error the Trial Court's overruling of his motion for new trial. Appellant specifically argues that the judgment is:

1. Contrary to law in that it is not supported by the evidence; and

2. There was an error of law occurring at the trial and excepted to by the appellant, in that the Trial Court ordered the appellant to pay support when there was no obligation or duty to pay said support.

Appellant additionally argues that the support awarded by the Trial Court was in gross abuse of the sound discretion of that court.

The contentions of the parties to this litigation present two intermingled questions, to-wit: Is support for a college education (more specifically: education beyond the twelfth year of education provided by the public schools), when warranted by appropriate circumstances, within the contemplation of Indiana's statutory provisions on support and custody, or within the purview of the common-law rule which renders a parent liable for the necessities supplied to his minor child?

The judicial climate has not, in years past, been readily receptive to an affirmative position on the above questions. See *Middlebury College* v. *Chandler* (1844), 16 Vt. 683, 42 Am. Dec. 537. This Court, as recently as 1959, pointed out that:

"The general rule in other States is that a college education is not a necessary required to be furnished by a parent to his minor children as a matter of legal duty. Such duty requires only that he provide his child with an elementary and high school education. . . ." *Haag* v. *Haag* (1959), 240 Ind. 291, 304, 305, 163 N. E. 2d 243.

The statement of the Court in *Haag, supra,* is undoubtedly correct, if the "general rule" refers to a mere head-count of the various jurisdictions. It appears, however, that of those jurisdictions that have faced the question squarely in recent years, only Pennsylvania has remained completely static in light of the changing demands for education in our society. A discerning review of the decisions rendered by the jurisdictions still tied to some degree to the "general rule" uncovers two significant factors for our consideration:

> 1. The determinations, including past Indiana decisions, follow *stare decisis* decisions which were rendered in a time when high school was available financially to a limited number of families, and college was practically unattainable to the average family. (It is clear that this trend is, today, reversed.)
>
> 2. In none of the decisions of the "general rule" jurisdictions were there any legislative enactments which might have lended support to a judicial reversal of prior expressions of opinion. (In the instant appeal, there is a legislative enactment.)

We note that the following jurisdictions *have directly included* the expenses of a college education as an element of the support allowance: *Hale* v. *Hale* (1942), 55 Cal. App. 2d 879, 132 P. 2d 67; *Hart* v. *Hart* (1948), 239 Iowa 142, 30 N. W. 2d 748; *Clark* v. *Graves* (1955), Ky., 282 S. W. 2d 146; *Titus* v. *Titus* (1945), 311 Mich. 434, 18 N. W. 2d 883; *Lund* v. *Lund* (1950), 96 N. H. 283, 74 A. 2d 557; *Straver* v. *Straver* (1948), N. J. Eq., 59 A. 2d 39; *Cohen* v. *Cohen* (1948), 193 Misc. 106, 82 N. Y. S. 2d 513; *Atchley* v. *Atchley* (1945), 29 Tenn. App. 124, 194 S. W. 2d 252; *Jackman* v. *Short* (1941), Or., 109 P. 2d 860, 133 A. L. R. 887.

In light of the prominence of several of the jurisdictions above, and the dates of the decisions, we agree with what now appears to be an understatement in *Haag* v. *Haag, supra,* that:

> "There is a recent tendency in certain jurisdictions to require contributions to a college education for minor children. . . ." (at page 305)

While at least one jurisdiction, *Jackman* v. *Short, supra,* has expressly criticized the reasoning of past (*circa* 1930) Indiana decisions on the question, we are of the opinion that Indiana has not remained static in relation to the growing prominence of higher education as a necessity for both this State's citizens and the State itself. The first expression of opinion in this State on the propriety of required support for a higher education was rendered in *Morris* v. *Morris* (1930), 92 Ind. App. 65, 69, 171 N. E. 386.

> ". . . It is well known that there are worthy parents in all parts of the country, with sufficient means to do so, who do not send their children to college. We cannot say that each of them has failed in a legal duty to his child and to the State. . . . The legislative branch of our state government has enacted no statute making it a legal duty of a parent to give his child a college education, and this Court will not hold that it is the duty of a parent to provide such education, under the guise that it is a necessary." *Morris, supra.*

The legal position of *Morris, supra,* was re-affirmed in *Hachat* v. *Hachat* (1947), 117 Ind. App. 294, 71 N. E. 2d 927. In 1959, this Court in *Haag, supra,* re-affirmed a portion of the *Morris, supra,* opinion, but indicated by citation and quotation of an American Law Reports Annotation, 56 A. L. R. 2d 1209, that exceptions to the basic Morris Rule were recognized in other jurisdictions, and if sufficiently urged, could be recognized in Indiana. See, for example, *Carey* v. *Carey* (1961), 132 Ind. App. 30, 34, 171 N. E. 2d 487. The Court, in *Haag, supra,* stated:

> ". . . However, courts . . . have taken 'into account various specific factors, such as the financial ability of the father, the ability and capacity of the child for college work, the nearness of the child to his majority, whether the child is self-sustaining or not, and the father's willingness to provide for such education, as shown by some agreement thereto on his part. In a few of the college education cases the courts have had occasion to consider the effect of particular statutory provisions.' 56 A. L. R. 2d 1209." *Haag* v. *Hagg, supra,* at page 305.

Although the arguments advanced in the various jurisdictions (as listed *supra*) are persuasive in favor of an inclusion of higher education under the appropriate circumstances as a factor in determining the allowance for support, we need not directly meet the common-law question. We do point out, however, that the language of the *Morris, supra,* case and the cases cited to support that decision, are not consistent with the prevailing judicial attitudes on the questions presented in this case.

The legislature, in 1961, amended its statutory provisions for support allowances to include an express reference to higher education. Burns' Indiana Statutes, Anno., (1968 Repl.), § 3-1219, now provides:

> "The court in decreeing a divorce shall make provision for the guardianship, custody, support, and education of the minor children of such marriage; and the court may require the father to provide all or some specified part of the cost of education of such child or children beyond the twelfth year of education provided by the public schools, taking into consideration the earnings of the father, the station in life of the parents and child or children involved, the aptitude of the child or children as evidenced by school records, the separate property of the child or children, and all other relevant factors: Provided, That the jurisdiction over the child or children shall remain in the court at all times during the child's or children's minority and shall not be lost because of the death of either parent."

The language of Burns' § 3-1219 renders but one clear and unequivocal interpretation: The Trial Court may, within its sound discretion, require specifically, a total or partial contribution by the father to the advanced education of the minor child or children under that court's jurisdiction. As we have outlined previously, this interpretation is altogether consistent with the present judicial attitude concerning the question of college support.

Therefore, appellant's .contention that as a matter of law the Trial Court erred in imposing the legal obligation of support for a college education for his two minor daughters, is unacceptable.

Appellant additionally argues in his brief to this Court that the Trial Court's judgment and order was not supported by substantial evidence. We find it clear, however, from the "findings of fact" compiled by the Superior Court of Clark County to facilitate appeal, that the Trial Court was sufficiently informed of:

1. The father's income;
2. The father's previous ability to make payments;
3. The income of the two daughters;
4. The scholastic ability of the two daughters; and
5. The station of life of all the parties to the litigation.

Therefore, appellant's contention that there was not substantial evidence to support the judgment, also must be rejected.

The only remaining question of merit presented by the appellant, therefore, is whether the Trial Court abused grossly its sound discretion in ordering support for the college-bound daughters in addition to the third younger daughter.

". . . (T)he amount a father should be required to pay for the support of a minor child rests in the sound discretion of the trial court, whose judgment will not be disturbed on appeal unless an abuse of discretion is shown. *Poppe* v. *Poppe* (1944), 114 Ind. App. 348, 351, 52 N. E. 2d 506; *Seward* v. *Seward* (1956), 126 Ind. App. 607, 614, 134 N. E. 2d 560." *Haag* v. *Haag, supra.*

As indicated above, the 1961 amendment to Burns' § 3-1219, *supra,* did not alter this rule of review. It is important to recognize, in resolving appellant's contention, what "sound discretion" of the Trial Court represents.

"The term 'discretion' denoted the absence of a hard and fast rule. (cite omitted) When invoked as a guide to judicial

action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with a regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Langnes* v. *Green* (1931), 282 U. S. 531, 541, 51 S. Ct. 243, 247, 75 L. Ed. 520; *United States* v. *National City Lines* (1947), 7 F. R. D. 393, 397, 398.

We recognize the force of appellant's argument that a man earning $75 a week in take-home pay is not in a position to send two children to college simultaneously. We recognize also, however, that litigation of this nature involves many countervailing factors and that the Trial Court must weigh these elements with careful scrutiny to achieve an equitable result.

On review of the record, we note several of these factors, which in our opinion, persuasively and adequately demonstrate that the judgment of the Trial Court was the result of a conscionable effort to achieve a fair, compassionate, and equitable resolution of the issue before the court.

*First.* The allowance made for the support of the two girls was only a partial amount of the sum necessary to finance their college attendance. The Indiana University Bulletin lists as the basic cost of an on-campus education (excluding clothes, travel, personal items and entertainment) as $1,280. Subtracting the listed tuition (which was awarded the two daughters), the amount necessary to finance the education is still approximately $880, with the amount ordered for support for each of the girls being only $400 each year.

Appellant, therefore, has been ordered to finance less than one year of education for only one person, rather than the full costs of two students.

*Second.* Appellant was current in his support payments at the time of the hearing on the petitions to modify the divorce decree. The appellant petitioned to be relieved of the two daughters on the ground that they had become eighteen years of age, the cut-off in the original divorce decree.

It may be that the appellant's present financial condition has worsened from that upon which the two previous support awards were based. However, there is no evidence of a change in circumstances on the record. Therefore, while the appellant's financial burden on the face of the order may seem harsh, it is in reality less than previously ordered and complied with.

*Third.* The two young women, to whom the benefits of the Trial Court order flow, were found by the Trial Court, via their grades and scholarships, to be of high aptitude and college material.

*Fourth.* Both of the girls are nearing their majority and the burden placed on the appellant will not be a lengthy one.

*Fifth.* The young women must earn on their own more than half of the amount necessary to attend college. If they are not sufficiently motivated to attend college and do not save the necessary funds, appellant will be relieved of all responsibilities of support.

From this evidence, and the inferences reasonably drawn therefrom, we cannot overturn, as a gross abuse of discretion, the judgment rendered by the Clark Superior Court. In turning to another jurisdiction, we find that Wisconsin would explicitly authorize the Trial Court judgment:

"We are of the opinion that as a general rule, in a case where a child under 21 years of age who has completed high school is desirous of attending college and whose high school record has demonstrated that he has the capacity to do college work, a court should not relieve the father from at least being required to continue paying the monthly support money provided in the divorce judgment for the period prior to the child arriving at the age of 18 years. . . ." *Peck* v. *Peck* (1956), 272 Wis. 466, 76 N. W. 2d 316, 56 A. L. R. 2d 1202. (This case was mistakenly cited in *Haag* v. *Haag, supra,* as supporting the Morris Rule.)

And, while we recognize that the appellant strongly feels that he is being unduly burdened financially, we are reminded that:

". . . It is the birthright of every boy (or girl) to obtain at least a general and useful education. The responsibility of providing the necessary funds to assure this advantage to

the minor rests primarily on the . . . (father). Untold sacrifices are made by parents who remain steadfast to their marital obligations in order to educate their children. The same responsibility rests on parents who seek and obtain a divorce. . . ." *Underwood* v. *Underwood* (1931), 162 Wash. 204, 298 P. 318, 320.

Therefore, in light of the shifting common-law and the legislative provisions, we rule that the Trial Court did not abuse its discretion in reaching its judgment on the petitions to modify the divorce decree, and the judgment is affirmed.

Arterburn and DeBruler, JJ., concur; Jackson, J., dissents with opinion in which Hunter, J., concurs.

## DISSENTING

JACKSON, J.—I am unable to concur in the majority opinion and dissent thereto.

To be brief and to the point it is my position that the question as to whether or not a father should be compelled to underwrite the college expenses of his children depends on the circumstances of the individual case.

Ordinarily support for a minor child ceases at age eighteen or at the time of emancipation, whichever first occurs.

It is, I think, quite reasonable to require a father who is financially able, either by reason of accumulated wealth, or by virtue of an adequate income, to assist his children in acquiring a college education. On the other hand I think it is an abuse of discretion, illegal and morally wrong to require a parent possessed of an extremely limited income to defray the college expenses of his children.

In the case at bar it appears appellant's take home pay is $75.00 per week, that since the divorce he has remarried, that in addition to the $40.00 per week support paid for the children appellant pays the life insurance premiums on the life insurance policies of the children in the sum of $5.21 per week. A simple mathematical computation of the financial

condition of the appellant herein reveals that after payment of weekly support and insurance payments he has the total sum of $29.79 left out of his $75.00 take home pay with which to support himself and the second wife and family.

In view of the financial circumstances delineated in the case at bar I am not impressed with the out of state cases cited in support of the majority opinion. The case of *Haag* v. *Haag* (1959), 240 Ind. 291, 163 N. E. 2d 243 was decided subsequent to the out of state cases cited in the majority opinion and is the law in Indiana.

The rule in the *Haag, supra,* case might be modified in view of the 1965 amendment of the statute but certainly not under the circumstances delineated in the case at bar.

The judgment of the trial court should be reversed and remanded with instructions to grant a new trial, or in the alternative to render judgment in favor of appellant to modify the decree.

Hunter, J., concurs.

NOTE.—Reported in 241 N. E. 2d 50.