**ST. JOSEPH BANK AND TRUST COMPANY, a South Bend, Indiana, Trustee of the James C. Massey 1977 Irrevocable Trust for and on behalf of John Massey Irrevocable Trust, Peter C. Massey Irrevocable Trust, Robert E. Massey Irrevocable Trust, and Thomas A. Massey Irrevocable Trust, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 82–2477.**

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1983.

Decided Sept. 14, 1983.

David English Carmack, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

* The Honorable Philip Nichols, Jr., of the United States Court of Appeals for the Federal Circuit, is sitting by designation.

Charles M. Boynton, Doran, Manion, Boynton, Kamm & Esmont, South Bend, Ind., for plaintiffs-appellees.

Before POSNER, NICHOLS * and COF-FEY, Circuit Judges.

NICHOLS, Circuit Judge.

A father transferred stock to a trustee for the education of his then minor children, as required by a divorce settlement with their mother. The stock, though valuable, had until then a zero basis. Shortly after the transfer, the trustee sold part of the stock at market. The question we must decide is whether the gain is taxable under the United States Internal Revenue Code as income to the settlor or the trustee, there being no doubt it was one or the other. The trustee obtained a favorable holding in the district court. The government appealed to this court, and we hold that the district court's decision was correct and we therefore affirm.

### Facts

The district judge referred cross-motions for summary judgment to a magistrate for a recommended decision. The facts are undisputed and are revealed in documents, interrogatory answers, and an affidavit in support of the trustee's motion. The magistrate recommended a decision favorable to the trustee, which the district judge adopted, and entered judgment accordingly.

James L. Massey and his spouse, Kathryn K. Massey, both of Indiana, on February 9, 1977, entered into an "Agreement of Settlement" in contemplation of, but not in consideration of, their divorce under a proceeding then pending in an Indiana court. They had been married since 1958 and had four children aged 17, 15, 13, and 11. They agreed to settle their property rights and future support and maintenance of the wife and children. After dividing up various real and personal property, the agreement deals with 6,600 shares of Codex Corp., the

involved zero basis stock, which the husband had acquired in exchange for patent rights. He was to transfer 2,000 shares to the wife as her separate property, keep 2,400 shares as his separate property, and transfer 2,200 shares to an irrevocable educational trust to be used for educational expenses of the minor children. He also agreed that she should have custody of the children, and he would pay $200 per month per child to the clerk of the court, plus reasonable medical and dental expenses.

The irrevocable deed of trust was attached to and made a part of this agreement and was to be approved by the court in approving the settlement. The trustee, appellee here, was to change, invest, and reinvest the trust property and promptly sold 1,000 shares of the Codex Corp. stock at market. The trustee was to divide the trust assets into an equal part for each beneficiary, apply principal and income for the post-high school education of each beneficiary, including college and post-graduate study. It was to distribute each beneficiary's share of the principal remaining to him, on his reaching 25. The agreement was irrevocable and showed an acceptance by the bank.

The court proceeded after hearing to dissolve the marriage, to award the mother custody of the children, to approve the property settlement, and to order the husband to carry out its terms.

Kathryn Massey stated by affidavit that she considered establishment of the educational trust to be part of the settlement. It is clear that it was all one package and the wife, of course, having custody, benefited from an express provision for education of the children as of course did the children themselves. The district court rejected the government's contention that the educational trust was a gratuitous provision for the children, independent of the settlement with the wife, or not bargained for by her. This seeks to inject an issue of fact with no support in governing documents. The property the wife directly received, including her portion of the Codex stock, would inure to her benefit without likely diminution by the necessity to support and educate the children. The state court by the terms of the decree clearly intended to make the educational trust an integral part of the property and support settlement it approved and ordered carried out.

■ The magistrate's opinion correctly cites Ind.Code § 31–1–11.5–12 (Burns Code Ed.Rep.1980); *Gower v. Gower,* 427 N.E.2d 703 (Ind.App.1981); *Dorman v. Dorman,* 251 Ind. 272, 241 N.E.2d 50 (1968), for the proposition that in appropriate cases, where the parties' means permit, the decree may require education of a child in college, or other institution of higher learning, beyond "minority" and beyond "emancipation" at 21, even though other support obligations towards children cease at 21. We give weight to the opinion of a United States district judge about the law of his own state. We do not understand the government to contend here that there would be anything *ultra vires* if an Indiana judge in framing a divorce decree and by approving such an educational trust as we have here, acted to impose upon the husband an obligation to continue financing the offspring's education after 21, and up to 25 years of age, if necessary. That is what he did. In that state "education" is deemed an integral part of "support."

Upon receiving the portion of Codex stock allocated to the educational trust, the trustee sold 1,000 shares and paid $14,929 in income tax on behalf of the beneficiaries. It now seeks refund of this amount with interest and costs.

The trustee filed its timely claim for refund before the statute of limitations had run on the return of James L. Massey who by the trustee's theory was properly liable for the tax on the gain realized. Thus there is no issue of inequitable conduct even though the ability of the government to recover from James L. Massey may now be questionable.

*Statutes applicable*

Internal Revenue Code of 1954 (26 U.S.C.):

SEC. 644. SPECIAL RULE FOR GAIN ON PROPERTY TRANSFERRED TO TRUST AT LESS THAN FAIR MARKET VALUE.

(a) [as added by Sec. 701(e)(1), Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520, and amended by Sec. 701(p)(1)(A), Revenue Act of 1978, Pub.L. No. 95–600] *Imposition of Tax—*

(1) In general—if—

(A) a trust (or another trust to which the property is distributed) sells or exchanges property at a gain not more than 2 years after the date of the initial transfer of the property in trust by the transferor, and

(B) the fair market value of such property at the time of the initial transfer in trust by the transferor exceeds the adjusted basis of such property immediately after such transfer,

there is hereby imposed a tax determination in accordance with paragraph (2) on the includible gain recognized on such sale or exchange.

(2) [as amended by Sec. 701(p)(2), Revenue Act of 1978, *supra*] *Amount of tax.*—The amount of the tax imposed by paragraph (1) on any includible gain recognized on the sale or exchange of any property shall be equal to the sum of—

(A) *the excess of* —

(i) the tax which would have been imposed under this chapter for the taxable year of the transferor in which the sale or exchange of such property occurs had the amount of the includible gain recognized on such sale or exchange, reduced by any deductions properly allocable to such gain, been included in the gross income of the transferor for such taxable year, over

(ii) the tax actually imposed under this chapter for such taxable year on the transferor, plus

(B) if such sale or exchange occurs in a taxable year of the transferor which begins after the beginning of the taxable year of the trust in which such sale or exchange occurs, an amount equal to the amount determined under subpara-

graph (A) multiplied by the annual rate established under section 6621.

The determination of tax under clause (i) of subparagraph (A) shall be made by not taking into account any carryback, and by not taking into account any loss or deduction to the extent that such loss or deduction may be carried by the transfer or to any other taxable year,

(3) *Taxable year for which tax imposed.*—The tax imposed by paragraph (1) shall be imposed for the taxable year of the trust which begins with or within the taxable year of the transferor in which the sale or exchange occurs.

(4) *Tax to be in addition to other taxes.*—The tax imposed by this subsection for any taxable year of the trust shall be in addition to any other tax imposed by this chapter for such taxable year.

(b) *Definition of Includible Gain.*—For purposes of this section, the term "includible gain" means the lesser of—

(1) the gain recognized by the trust on the sale or exchange of any property, or

(2) the excess of the fair market value of such property at the time of the initial transfer in trust by the transferor over the adjusted basis of such property immediately after such transfer.

SEC. 2516. CERTAIN PROPERTY SETTLEMENTS.

[Act of August 16, 1954, c. 736, 68A Stat. 409.]

Where husband and wife enter into a written agreement relative to their marital and property rights and divorce occurs within 2 years thereafter (whether or not such agreement is approved by the divorce decree), any transfers of property or interests in property made pursuant to such agreement—

(1) to either spouse in agreement of his or her marital or property rights, or

(2) to provide a reasonable allowance for the support of issue of the marriage during minority, shall be deemed to be transfers made for a full and adequate

consideration in money or money's worth.

The parties have cited other statutes and regulations, but the foregoing are sufficient to set up the issue we must decide.

We note that § 2516 was part of the new Internal Revenue Code of 1954 and was located for codification purposes among gift tax provisions. The legislative history shows that § 2516 was enacted because of "substantial uncertainty" whether a gift may result from transfers to a wife under a property settlement incident to a divorce. 3 U.S.Code Cong. & Ad.News 4467, 5125, 5337 (1954).

We further note that § 644 having been enacted several years after 1954, the Congress could not have adverted in 1954 to the impact that § 2516 might, literally construed, have upon § 644. On the contrary, § 644 was inserted into the Code by amendment with § 2516 long since in place.

*Opinion*

■ The magistrate's opinion, adopted by the district judge, reflects a straightforward application of both § 644 and § 2516 to the matter at hand. By operation of § 2516, the trust having resulted from an agreement in writing between husband and wife relative to their marital and property rights, divorce having promptly ensued, and property having been transferred to provide a reasonable allowance for support of issue of the marriage during minority, the husband is deemed to have received full and fair consideration in money or money's worth. This having been so, the gain in the value of the stock did not, under § 644, occur while it was in the hands of the trustee, but was inherent in the transfer itself. Otherwise stated, it was the transfer by James L. Massey to the trust, and not the sale of 1,000 shares by the trust, that stepped up the basis to the then fair market value. Of course, if the value enhanced further in the one day the trustee held the stock, there would be something for § 644 to apply to, not otherwise.

As is usual in tax cases at the appellate level, the government argument is multi-faceted and does full justice to the resourcefulness of government counsel. In the first place, it is said that § 2516 is part of the gift tax law and should not be cited in income tax litigation. It is true it was enacted to clear up a perceived ambiguity in the then gift tax law. Yet there it was in the Code, and the framers of § 644, unless more careless than we have any right to suppose, or do suppose congressional draftsmen are, could not have overlooked that by its literal terms it controlled the date when a step-up in basis occurred. Section 644 is primarily concerned with tax avoidance by transfers of appreciated property to trusts. It does not by its terms deal wholly or primarily with property settlements incident to divorces. In the latter class of cases the necessity of making a transfer has most likely come upon the transferor on account of reasons more pressing even than tax avoidance. In the instant case, Mr. Massey might antecedently considered well have been incurring added taxes instead of avoiding them, if the step-up occurred during "his watch." Thus, if the authors of § 644 adverted to § 2516, as we must assume they did, they would not have felt that allowing § 2516 to have its natural effect, according to its language, would in any way frustrate the policy of § 644. The trustee can avoid the § 644 tax by holding the property for two years; thus, if the step-up occurs on the transfer to the trust and not on its subsequent sale, the settlor incurs an income tax which the trustee, by doing nothing, could have avoided. The settlor may, of course, still by § 2516 avoid a gift tax.

The appellant, however, undercuts its own argument by stating—

* * * The District Court's mistaken reliance on the gift tax statute was not in itself necessarily a crucial error, since the properly applicable income tax standards are quite similar. * * *

Apparently not only quite but entirely similar unless some difference in the income tax standards is suggested. The source of this idea is not any counterpart section to § 2516 in the income tax portions of the

Code. The idea seems to be that the Supreme Court judge-made a counterpart in *United States v. Davis,* 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962). This decision reasons, making no reference to § 2516, although it was on the books during the pertinent tax year, that a transfer of stock to a divorcing spouse for settlement of her claims was done in an arm's-length transaction. The value of the surrendered marital rights was presumed to have been bargained as equal in value to the readily ascertainable value of the stock, and thus the husband received a full and fair value for his stock. Having thus, in effect, sold it, he was rightly assessed with income tax on the gain over basis, and (in dictum) an attempt to assess gift tax would be wholly out of line. The wife is said in another dictum, at page 73, to have got the benefit of the stepped-up basis on the stock thereafter.

The Court of Claims subsequently applied *Davis* as a precedent in a case when the presumption of arm's-length bargaining and a full and fair equivalent were glaringly weak under the actual circumstances, under which a wealthy wife transferred property to an impecunious husband under circumstances where overpayment appeared factually highly probable. *Matthews v. United States,* 425 F.2d 738, 191 Ct.Cl. 674 (1970). The government admits that the rule is the same when a parent in a divorce action transfers to a wife appreciated property in discharge of state-imposed child support obligations. *Commissioner v. Halliwell,* 131 F.2d 642 (2d Cir.1943), *cert. denied,* 319 U.S. 741, 63 S.Ct. 1029, 87 L.Ed. 1698 (1942), a case cited with approval in *Davis.*

The government's argument is that a wife must give up something specifically to secure the transfer for child support when, as here, the children receive their support from a trustee and not from the wife. Apparently, by that view, some benefit the husband retained must be shown to have been earmarked as a *quid pro quo* conferred by the wife for the children and not for her own benefit. The reason for getting away from § 2516 is that some transactions may be "gifts" under the income tax law, when the zero basis passes through, though they are not gifts under the gift tax law. As a specific example, the government gives only one: that the divorce must occur within two years for gift tax purposes, but not necessarily that soon for income taxes. The reason why Congress should wish to complicate the Code in this fashion is not stated.

In some cases wives have bargained for provision to support children who are not minors but adults. *Spruance v. Commissioner,* 60 T.C. 141 (1973); *Estate of Glen v. Commissioner,* 45 T.C. 323 (1966). Then the court looks very hard to be sure that the wife actually used her own rights as bargaining counters to obtain the desired provision; still it is not impossible to invoke the *Davis* rule. We do not think an analysis of the negotiations and agreements, to determine what was bargained for what, is appropriate in case of benefits to the actual spouse or to the minor children of the marriage, and just that distinction is drawn in *Spruance,* which involved both minor and adult children, *i.e.,* adult at the time of the settlement. We think the record is plain that here the provision for education of minor children was part of the bargained package of provisions and anything the wife did not get under the settlement must be deemed surrendered in consideration of, among other things, the educational trust. The trust instrument also recites that the husband does not, by carrying it out, obtain any discharge of any parental obligation. This is not inconsistent with the fact that he does obtain a discharge of obligations towards the wife. The whole theory is that she bargains with her own rights, not those of the minor children.

Appellant, having argued itself out from under § 2516, does not make a point of any excess of the trust provisions over § 2516 in that they provide for support of the children not just during minority, but afterwards until age 25 to the extent needed for education. As we have seen under income tax law, provision for an adult child, if bargained for, can be held, or at least has been, possibly adequate to avoid a gift.

One hesitates to say this could not possibly be true where § 2516 applies in a gift tax case. Probably here it suffices that the trust takes effect and for a substantial period operates during the minority of even the oldest child, who as we have seen was 17 when the court approved the settlement. A mere carryover after the minority expires should not then operate to revive gift status, producing a calculation or rather speculation, of immense complexity, as educational needs of the young of course are not all the same, but continue to varying ages.

We are of the opinion that in view of appellant's concession that in the context of a divorce settlement what is not a gift for income tax and for gift tax purposes is pretty nearly the same, § 2516 should be applied either directly or by analogy to the case we have, and an effort to complicate the law by assertion of minor differences should be avoided. If existing case law has developed differences, we are not shown with any clarity either exactly what they are, nor that they include the case at bar.

It follows that the district court's decision is correct and must be

AFFIRMED.

POSNER, Circuit Judge, concurring.

I agree that the judgment of the district court should be affirmed but I respectfully disagree with the ground—section 2516 of the Internal Revenue Code—on which my brethren have decided to place affirmance.

If you use stock or other capital assets that have appreciated since their acquisition to pay off a debt, the payment is a realization of the gain on the property and you must pay capital gains tax. So if in transferring appreciated stock to the trust which he created for his children Mr. Massey was paying off debts to his wife or his children (or both his wife and his children) he realized a capital gain on the stock, but the trust—the taxpayer in this case—did not when it later sold the stock at a price no greater than its fair market value on the day the trust received it. If on the other hand the transfer was merely a gift to the children (in trust) no gain was realized till the trust sold the stock, and the trust must pay capital gains tax.

If I were free to do so, I would hold that when a husband transfers property to his wife as part of a divorce settlement there is no presumption that he is simply paying off a debt arising from the claim that family law gives a divorced wife to continued support by the husband. The transfer is more likely to be, at least in part, a recognition of the wife's contribution to the creation of the marital property, as in a division of partnership assets when a partnership dissolves—a distribution that in general is not taxable, see Chommie, The Law of Federal Income Taxation 526 (2d ed.1973). But in *United States v. Davis*, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962), the Supreme Court adopted a rule that a transfer of property between divorcing spouses is consideration for the recipient's surrender of her (as it usually is) marital rights rather than a distribution of assets of the marital partnership. Although it has been strongly criticized, see, e.g., Areen, Cases and Materials on Family Law 691–92 (1978); Chirelstein, Federal Income Taxation 84–85 (1979), *Davis* was a unanimous decision from which the Supreme Court has shown no disposition to recede.

The present case is factually distinguishable from *Davis* because the wife did not receive the property; the trust for the children did. But she submitted an uncontradicted affidavit that the transfer was in settlement of her marital rights. This is not implausible; if she loves her children, an increase in their wealth is a benefit to her which she might accept in partial compensation for relinquishing her marital rights as a divorced wife. The transfer may also represent payment of a contingent debt to the children arising from their (qualified) right under Indiana law to require their father to pay for their college and postgraduate education. Probably the transfer is not all gift or all payment of claims but in part a gift to the children and in part satisfaction of their and the wife's family-law claims against Mr. Massey, and it may also be in part—perhaps in major

part—an indirect return to the wife of the part of the marital property created by her efforts whether in the market or in the home. (A housewife contributes to the wealth of the family by freeing up, for the production of additional market income, time that the husband would otherwise have to devote to household work. This and other points made in the growing literature on the economics of the family, on which see Becker, A Treatise on the Family (1981), reinforce the criticisms that have been made of the *Davis* decision.) But the Court in *Davis* was unwilling to partition the transfer of property to the wife between debt-payment and other purposes; it insisted, for reasons of administrative convenience, that the transfer be treated as consideration for the surrender of her marital rights and as nothing else. In this case, the wife's affidavit and the children's right (qualified and contingent as it is) under Indiana law to require parents who can afford to do so to pay for their college and postgraduate education were some evidence that the transfer was properly characterized as a purchase of actual or potential claims rather than as a gift or a distribution of assets already equitably owned by the wife or children; and the government put in no contrary evidence.

So this is a fact case; and section 2516 of the Internal Revenue Code is irrelevant or at least unhelpful. The section provides that if a transfer of property pursuant to an agreement in contemplation of divorce is made either in settlement of the transferee spouse's marital rights or "to provide a reasonable allowance for the support of issue of the marriage during minority," the transfer shall be deemed to have been "made for a full and adequate consideration"; in other words, it is not a gift. There is grave doubt that the statute is intended to have any application except in gift-tax cases but in any event it has no useful application to this case. The first part of the section, relating to settlement of marital rights, is identical to the standard of *Davis;* and the issue here is not what the standard is but its application to the facts—an issue that section 2516, even if applica-

ble, does not illuminate. The second part of section 2516, relating to support of children, is by its terms inapplicable to this case, since the trust that Massey set up was not limited to support of his children "during minority." We are not authorized to delete these words from the statute, and, with all due respect, I fail to understand what my brethren mean in saying that section 2516 can be applied here by analogy.