**Richard THIELE, Petitioner-Appellant,**

v.

**Judy THIELE, Respondent-Appellee.**

No. 1-1284A316.

Court of Appeals of Indiana,
First District.

June 24, 1985.

Gary D. Sallee, Hughes & Hughes, Indianapolis, for petitioner-appellant.

Patrick W. Harrison, Cline, King, Beck & Harrison, Columbus, for respondent-appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Richard Thiele appeals the judgment finding him in contempt of court for failure to comply with an order requiring him to provide college education expenses for his daughter and further ordering him to continue to comply with the order. We affirm.

## FACTS

The marriage of Richard and Judy Thiele was dissolved by decree entered January 13, 1982. Subsequently, on November 9, 1982, the court ordered Richard to pay "for room, board, tuition, books and miscellaneous expenses" for the college education of the parties' minor child, Patricia "so long as she has an acceptable academic record at a state university and is pursuing an undergraduate degree," and limiting Richard's obligation for college expenses to not to exceed $4,680 per calendar year. Record at 28.

Patricia entered Indiana University for the Fall semester of 1982, and completed that semester earning a 2.4 grade point average.[1] Richard fulfilled his obligation for college expenses pursuant to the court's order for this semester.

At the end of the first semester, Patricia informed Richard that she was dropping out of college and was going to attend beautician school. Patricia provided her own expenses for beautician training, completed her training, and is licensed as a beautician. However, she has not worked at this vocation.

---

1. The 2.4 average was computed on a 4.0 scale and represents an acceptable academic record.

Patricia re-enrolled in Indiana University in August of 1984 [2] and is now continuing her education pursuing a baccalaureate degree in business. Richard refused to provide college expenses under the November 9, 1982, order, contending he was relieved from that order when Patricia dropped out of school in 1982. The trial judge ruled otherwise, and in response to Judy's petition, found Richard in contempt, ordered him to reimburse Judy for college expenses paid for the fall semester 1984 and determined that Richard was under a continuing obligation to pay educational expenses as provided in the November 1982 order. Further relevant facts are stated in our discussion of the issue before this court.

### ISSUE

The single issue [3] presented for our decision in this case simply is this: Was Richard completely relieved from the obligation to provide college expenses for Patricia under the November 9, 1982, court order by Patricia's act of dropping out of school at the end of her first semester?

### DISCUSSION AND DECISION

Prior to 1961, Indiana law was that a college education was not a necessity which a parent had a legal duty to furnish his minor child, such legal duty being limited to providing elementary and secondary school education. *Haag v. Haag* (1959), 240 Ind. 291, 163 N.E.2d 243. However, our supreme court in *Haag* recognized "a recent tendency in certain jurisdictions to require contributions to a college education for minor children ..." 240 Ind. at 305, 163 N.E.2d at 249. Our legislature, undoubtedly responding to the trend alluded to in *Haag*, amended the then applicable statute, Burns' Indiana Statutes, Anno., § 3-1219 to provide that

"the court may require the father to provide all or some specified part of the

cost of education of such child or children beyond the twelfth year of education provided by the public schools, taking into consideration the earnings of the father, the station in life of the parents and child or children involved, the aptitude of the child or children as evidenced by school records, the separate property of the child or children, and all other relevant factors; ..."

This question next came before our supreme court in *Dorman v. Dorman* (1968), 251 Ind. 272, 241 N.E.2d 50 (Jackson, J. and Hunter, J., dissenting) where it was held that under Burns' § 3-1219, "the trial court may, within its sound discretion, require specifically, a total or partial contribution by the father to the advanced education of the minor child" involved. The court found such interpretation to be "altogether consistent with the present judicial attitude concerning the question of college support." 251 Ind. at 278, 241 N.E.2d at 53.

We have not regressed in this important area of the law since *Dorman* was decided in 1968. The applicable statute in 1982 when the order herein was entered provided that child support orders may also include where appropriate, "sums for the child's education ... at institutions of higher learning, taking into account the child's aptitude and ability and the ability of the parent or parents to meet these expenses;" Ind.Code § 31-1-11.5-12(b)(1). This statute further allows an order for educational needs to continue beyond the twenty-first birthday of the child. Ind.Code § 31-1-11.-5-12(d)(1). Thus, a greater obligation may be imposed upon parents under this statute than under Burns' § 3-1219 referred to in *Dorman*, because the obligation for college expenses may extend beyond age twenty-one. Thus, the law in this regard has progressed rather than regressed.

---

**2.** Patricia was twenty years of age at this time. She became twenty-one in January 1985.

**3.** Richard posits two issues which, in substance, are (1) did the court err in finding Richard in contempt, and (2) did the court err in its interpretation of the terms of the order requiring

Richard to pay Patricia's college expenses *"so long as* she has an acceptable academic record at a state university and is pursuing an undergraduate degree." We believe these issues are subsumed in the single issue as we have phrased it.

■ It is clear under current Indiana law, a parent, in a proper case, may be compelled to provide college expenses for a child even continuing beyond the child's twenty-first birthday. Ind.Code § 31–1–11.5–12; *St. Joseph Bank and Trust Co. v. United States* (7th Cir.1983), 716 F.2d 1180. Here, it is not contended that Patricia is not college material. Neither does Richard claim to be financially unable to provide college expenses for his child. Rather, the sole contention of Richard is that when Patricia left the university at the conclusion of her first semester, such action automatically relieved him, fully, finally, and forever, of any obligation under the November 9, 1982, order requiring him to provide college education expenses for Patricia. He bases this position on this interpretation of the meaning of the language of the order *"so long as* she has an acceptable academic record ... and is pursuing an undergraduate degree." He argues that the words "so long as" limit his obligation to a specific time, and that his obligation having been terminated by Patricia's withdrawal from college, could not be revived by her re-enrollment approximately twenty months later. For the reasons hereinafter stated, we disagree with Richard's position.

Although there are no Indiana cases deciding the precise issue before us, we have found several cases from other jurisdictions which bear upon the question here presented. From these cases and what we consider to be the modern view of a parent's obligation for education of a child, we have formulated the position taken in this opinion.

In *Sovey v. Sovey* (1975), 30 Ill.App.3d 690, 333 N.E.2d 299, the Appellate Court of Illinois was faced with a factual situation similar to this case. The divorce decree in *Sovey* required the father to pay college expenses for the son. The son graduated from high school and then attended several colleges, completing two and one-half years of college. The son then dropped out of college in January 1973, and was employed. He returned to college in September 1974, at age twenty-two. It was undisputed that

the son had an aptitude for college and that his father was financially able to provide financial assistance for his son's education. In holding the father was still liable for college education expenses, the court stated that where the father has sufficient financial ability and the child shows an aptitude indicating he would benefit from a college education, the court may compel the father to provide for such education even beyond the minority of the child. *Sovey*, 333 N.E.2d at 301. With regard to the father's contention his obligations were satisfied and terminated when the son discontinued college, the court stated:

"With respect to appellant's first reason for believing he had satisfied his obligation we find there is simply no evidence to support his contention. Appellant suggests that the period during which his son should or could attend college should come to an end sometime, a contention with which we agree but under the evidence appearing in this record we find there was no intention either by Roger or his parents to consider that Roger had abandoned his intentions to attend college. From the testimony it is undisputed that he was successful in college and it appears that he had every likelihood of completing his college studies satisfactorily."

333 N.E.2d at 301.

Here, Patricia was either in college or some post-secondary school training (beautician school), and, according to her testimony, was never out of school for longer than four months. She now wishes to resume and complete her college education. Richard testified he wants her to receive her education and is willing to help. Record at 106. However, he believes he is no longer under the court order. Further, he does not believe Patricia needs a college degree to operate a beauty shop, which was the reason she gave him for returning to college. Patricia's stated reason for quitting college was to escape being in the middle of a fight between her parents over the financial arrangements. Record at 99–100. Thus, as in *Sovey*, the trial court here

could have concluded there was never any intention on the part of either Patricia or her parents to consider that she had abandoned her intentions to attend college.

Another case of interest is *Sakovits v. Sakovits* (1981), 178 N.J.Super. 623, 429 A.2d 1091. There, the son of the divorced parties expressed no interest in furthering his education upon graduation from high school and was employed in various occupations. At one point, the father gave him $3200 to assist the son in establishing himself. The father also had planned his future on the assumption he would not be called upon to finance further education for the son. Then, at age twenty-two, four years after his graduation from high school, the son decided to enter college. The New Jersey court determined that under the facts and circumstances of that case it would be inequitable to require the father to provide college education expenses. Limited to the pecular fact situation presented in *Sakovits*, we are in accord with the decision in that case. Although the court in *Sakovits* denied the request for college expenses, the court, nevertheless, made some observations especially relevant to the problem presented here. The court listed the usual factors generally considered in ordering a parent to pay college expenses, *e.g.*, the child's aptitude, the financial ability of the parent, and then added the following factors:

"1.  The reasonableness of time between graduation from high school and the time the child desires to attend college, and

"2.  Based on the parents' educational and social backgrounds, the expectation on behalf of the parents that the child would attend college."

429 A.2d at 1095.

The court continued:

"A common situation we must confront today is where, after high school graduation, the child takes a year or more hiatus from school to travel or work before attending college. The in-

tentions of the child of returning to college in such instance is [sic] usually made known to the parents and they, therefore, would still reasonably expect that child would go to college. An agreement or general understanding between the parents and child that there would be such hiatus may also be important." *Id.* The court noted that in *Sakovits*, the son had been declared emancipated and addressed the question:

"[T]o what extent can a child, *once formally emancipated*, call upon his/her parents for support. In none of the cases which the parents were required to support their children past the children's majority was a formal declaration of emancipation entered prior to the application.

"This court believes it would be propitious to extend this trend of requiring contribution to the college and/or professional education of children to cases where the child has at one point been formally declared to be emancipated, as a blanket proposition....

"This is especially important in today's society, as mentioned earlier, where a brief hiatus between high school and college is becoming commonplace. During the hiatus the child may very well move out of the parental home and attain full-time employment, with the noncustodial parent successfully applying to have the child declared emancipated. If we were to hold that the college education exception should not be extended to situations where the child had been declared emancipated, then the child would forever be estopped from seeking such contribution from his parents. This court deems such a situation to be totally inequitable." 429 A.2d at 1095–96.

As previously stated, the *Sakovits* court determined it would be inequitable to require the father to provide college expenses given the factual setting of that case, stating such would create an unreasonable, open-ended burden on parents who

might, at any time, be called upon to provide college expenses for a child. *Sakovits*, 429 A.2d at 1096. But, the *Sakovits* decision is expressly limited to the facts there presented. It is important to note that the court in *Sakovits* recognized that it could be appropriate to require parents to provide college education expenses where there had been a hiatus in the child's education. Thus, whether or not it is reasonable and equitable to require the parent to provide college education expenses depends upon the facts and circumstances of the individual case.

In *Currence v. Currence* (1982), 6 Ark. App. 297, 641 S.W.2d 40, the father agreed to be responsible for the college education expenses of the child so long as the child maintained a reasonable level of achievement. At the time and to the father's knowledge, the son was enrolled in the architecture program at the University of Arkansas. The father was not aware, and made no effort to find out, that ordinarily students required more than four years' time to complete the baccalaureate degree requirements in architecture. The father insisted his obligation ended after four years of college. The court held otherwise, saying:

"On the facts, we construe the provision as requiring the [father] to pay the college education expenses of his child until the child has successfully completed his required course of study to obtain a baccalaureate degree in his chosen field of study. The son must be diligent in his pursuit of the Baccalaureate Degree in Architecture and maintain a reasonable level of achievement.... [Citations omitted.]"

641 S.W.2d at 41.

▮ From these cases and the obvious intent of Ind.Code § 31–1–11.5–12(b)(1),

which intent is to meet the realities of the present day that education beyond high school is often a necessity,[4] we believe a rule can be fashioned which can be applied to cases such as the one presented here. That rule is that each case must be examined on a case by case basis depending upon the facts and circumstances peculiar to that individual case, in order to determine whether, based upon those facts and circumstances, it is reasonable or unreasonable, equitable or inequitable, to require the parent or parents to contribute to the expenses of a once discontinued but now resumed higher education. Among the facts which may be considered in making such a determination are—(1) the length of time elapsed between the interruption and resumption of the educational program; (2) the age of the child, (3) the financial ability of the parent or parents, (4) whether the child and the parents intended to abandon permanently the program of higher education when withdrawing from it; (5) the reasonableness of the child's present desire and purpose in returning to an institution of higher learning; (6) the activities of the child, particularly in relation to employment or business during the hiatus; (7) other provisions made for the child by the parent or parents; (8) the station in life of the child and the parent or parents' (9) any other facts or circumstances reasonably related to the need of the child for such education, the ability of the parent or parents to provide such education, and the reasonableness or equity in requiring the parent or parents to provide educational expenses. Appellate review of the decision of the trial court in granting or denying a request for such educational expenses should be limited to a determination of whether or not the trial court abused its discretion. Abuse of discretion is found only where the court's conclusion and judg-

---

**4.** In *Dorman v. Dorman* (1968), 251 Ind. 272, 277, 241 N.E.2d 50, 52, our supreme court recognized this fact and stated that "Indiana has not remained static in relation to the growing prominence of higher education as a necessity for both this State's citizens and the State itself."

What was apparent to our supreme court in 1968 is even more apparent seventeen years later in view of the well known increasing technology of 1985 society and business.

ment are clearly against the logic and effect of the facts and circumstances before the court or the reasonable deductions to be drawn therefrom. *Summerlot v. Summerlot* (1980), Ind.App., 408 N.E.2d 820; *Clark v. Clark* (1980), Ind.App., 404 N.E.2d 23.

■ Reviewing the judgment here in the light of the rule which we have announced, and considering the facts and circumstances of this case, we cannot say the trial court abused its discretion. Neither can we say that, as a matter of law, it was unreasonable or inequitable for the trial court, in this case, to hold Richard under a continuing obligation pursuant to the November 9, 1982, order to provide college education expenses for Patricia.[5] Neither are we impressed by Richard's statement that he does not believe Patricia needs a business education to operate her own beauty shop as justification for his argument that he should not be required to assist with her college education expenses. It is a matter of common knowledge that many competent and skilled workmen fail in their own business not because they cannot perform the work properly but from lack of business acumen.

Richard's argument that the words "so long as" in the order limited his obligation and relieved him from compliance when Patricia first left the university is unpersuasive. *See Currence* and *Sovey.*

For the reasons heretofore stated, we believe the trial court, under the facts of this case, did not abuse its discretion and that it is neither unreasonable nor inequitable to require Richard to continue to pay college expenses for Patricia. Likewise, it was not error to adjudge Richard in contempt for his failure to comply with the prior order.

Judgment affirmed.

NEAL and ROBERTSON, JJ., concur.

---

5. Neither party addressed the question of the applicability of the 1984 amendment to Ind. Code § 31–1–11.5–12(d)(3):

> "(d) The duty to support a child under this chapter ceases when the child reaches his twenty-first birthday unless:

> "(3) the child:
> (A) is at least eighteen (18) years old;
> (B) has not attended a secondary or post-secondary school for the prior four (4) months and is not enrolled in such a school; and,
> (C) is or is capable of supporting himself through employment;
> in which case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist, however, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting himself or

capable of only partially supporting himself, the court may order that support be modified instead of terminated."

Since this issue was not raised, consideration of this provision is not necessary to our decision. However, we observe the provision is not applicable for several reasons. First, subsections (d)(1) of Ind.Code § 31–1–11.5–12 provides that the duty to provide educational needs may extend beyond the child's twenty-first birthday or emancipation. Second, the conditions of subsection (d)(3)(B) were not met in that Patricia was enrolled in college. Third, the provisions of subsection (d)(1) are designed to meet the situation of the child at least eighteen but not yet twenty-one who is not attending school, and is capable of self-support. Fourth, this amendment did not become effective until September 1, 1984, which is subsequent to Patricia's return to the university. Thus, Ind.Code § 31–1–11.5–12(d)(3) affords no relief to Richard.