Jerry M. **CHAPMAN**, Appellant
(Respondent Below),

v.

Claudia **CHAPMAN**, Appellee
(Plaintiff Below).

No. 85A02-8604-CV-147.

Court of Appeals of Indiana,
Second District.

Aug. 31, 1987.

Rehearing Denied Nov. 24, 1987.

Alfred H. Plummer III, Wabash, for appellant.

Edgar A. Grimm, Grimm & Grimm, P.C., Auburn, for appellee.

SHIELDS, Presiding Judge.

Jerry Chapman appeals the trial court's judgment finding him in contempt of court and ordering him to pay his former wife's past child visitation expenses, her expenses incurred in attending the contempt hearing, and her attorney fees.

## FACTS

Jerry and Claudia Chapman were divorced in Indiana on June 13, 1980. Pursuant to the dissolution decree, Jerry was awarded custody of the couple's two children, and was ordered not to move outside of Indiana with the children. Immediately after the divorce, Claudia moved to Connecticut. In December of 1982, Jerry petitioned the dissolution court for permission to move out of state with the children. On June 2, 1983, the dissolution court granted Jerry's petition and ordered:

> "husband shall advance wife's and/or children's costs and expenses for travel in an amount not to exceed $2,500.00 a year."

Record at 37.

Jerry moved to Tennessee with the children where Claudia regularly visited them. In February of 1985, Claudia initiated the present action for contempt, alleging Jerry had not paid the $2,500.00 per year visitation expenses as ordered by the court. On November 5, 1985, following a hearing at which Claudia was present but Jerry was not, the dissolution court found Jerry in contempt of court for not appearing at the hearing and for failing to pay the visitation expenses as previously ordered. The court ordered Jerry to pay $7500.00 plus interest, which represented the unpaid visitation expenses, and ordered him confined until the amount was paid. The court also ordered Jerry to pay expenses incurred by Claudia in attending the contempt hearing and her attorney fees.

## ISSUES

On appeal, Jerry raises the following issues:

1) whether the court erred in finding it had personal jurisdiction over him;

2) whether the court erred in finding him in contempt for failing to attend the contempt hearing;

3) whether the court erred in finding him in contempt for failing to pay Claudia's visitation expenses; and,

4) whether the court erred in ordering him to pay Claudia's trial and appellate attorney fees.

We affirm in part and reverse in part.

## DISCUSSION AND DECISION

### I. Jurisdiction Over the Person

Jerry asserts the trial court did not have jurisdiction over his person because the requirements of Indiana Rule of Trial Procedure 4.4(A)(7) were not met. Claudia argues the court had personal jurisdiction over Jerry because an attorney entered an appearance on his behalf, and cites *Kirkpatrick Construction Co. v. Central Electric Co.* (1903), 159 Ind. 639, 65 N.E. 913 as support.

■ Contrary to Claudia's argument, with the adoption of the Indiana Rules of Trial Procedure, a general appearance does not act as a waiver of the defense of lack of personal jurisdiction. *State v. Omega Painting, Inc.* (1984), Ind.App., 463 N.E.2d 287. Jerry preserved his objection to jurisdiction by the timely filing of a T.R. 12(B)(2) motion. Therefore, we must address the merits of Jerry's argument.

The dissolution court did not acquire jurisdiction over Jerry's person for purposes of the contempt proceeding pursuant to T.R. 4.4(A)(7), which, in relevant part, reads:

"(A) Any person or organization that is a nonresident of this state ... submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

. . . . .

(7) living in the marital relationship within the state notwithstanding subsequent departure from the state, as to all obligations for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in the state."

Because neither Jerry, Claudia, nor their two children reside in Indiana, this rule does not afford the means by which personal jurisdiction can attach. *In re the Marriage of Hudson* (1982), Ind.App., 434 N.E.2d 107.

■ However, the dissolution court never lost the personal jurisdiction it acquired over Jerry in the original dissolution proceeding. In *Mueller v. Mueller* (1972), 259 Ind. 366, 287 N.E.2d 886, the wife had custody of the parties' children pursuant to the dissolution decree entered in 1964. She and the children then moved out of state. In 1970 the husband filed a petition in Indiana to gain custody of the children. The wife argued the Indiana court did not have jurisdiction over her person, and specifically disputed the applicability of T.R. 4.4(A)(7) because the parties' marriage had been dissolved before the effective date of the rule. The supreme court, without reaching the wife's argument, held the trial court retained the jurisdiction which had been established in the original divorce proceeding. Quoting from *Reineke v. Northerner* (1949), 119 Ind.App. 539, 84 N.E.2d 900, the *Mueller* court stated:

" 'It is apparent that the Daviess Circuit Court acquired jurisdiction over the person of the appellant when the appellee brought suit for divorce and she came into court seeking and obtaining custody of her infant child. The petition to modify the custody order being but an incident to the original proceeding, the *court never lost its jurisdiction over the person of the appellant for such purpose.* (our emphasis) 119 Ind.App. at 546, 84 N.E.2d at 902.'

. . . . .

Thus it is clear that even without considering T.R. 4.4(A)(7), jurisdiction over the person of appellant [wife] was retained

for the purpose of modifying the custody decree."

*Mueller v. Mueller*, 259 Ind. at 374–75, 287 N.E.2d at 891.

Likewise, the proceeding seeking to have the court hold Jerry in contempt for failing to abide by the terms of the dissolution decree, is "but an incident" of that proceeding and, therefore, the court never lost the personal jurisdiction over Jerry it previously acquired.[1] *Accord Rapaport v. Rapaport* (1987), 158 Mich.App. 741, 405 N.W.2d 165; *Carlin v. Carlin* (1983), 62 Or.App. 350, 660 P.2d 204; *State ex. rel. Ravitz v. Circuit Court of Monongalia County* (1980), 166 W.Va. 194, 273 S.E.2d 370; *Glading v. Furman* (1978), 282 Md. 200, 383 A.2d 398; *Brown v. Brown* (1973), 31 Colo.App. 557, 506 P.2d 386; *McClellan v. McClellan* (1970), 125 Ill.App.2d 477, 261 N.E.2d 216. *See also* 62 ALR 2d 544 §§ 1, 3, and Restatement (Second) of Conflict of Laws § 26 (1971).

## II. Contempt for Failure to Appear

■ The court found Jerry in contempt for failing to appear at the hearing. Jerry argues his failure to appear was not contemptuous because he was ill that day, and consequently did not have the culpable intent to violate the court's order to appear.[2] Questions of intent and good faith are questions of fact. *In re Lemond* (1980), 274 Ind. 505, 413 N.E.2d 228. Jerry was served with process ordering him to appear, and did in fact personally receive the process delivered by the sheriff of the county in Tennessee where he resides. Thus, the evidence clearly shows a violation of the order to appear, which supports an inference the violation was intentional. Furthermore, this evidence was uncontra-

dicted. Although Jerry's attorney represented to the court that Jerry was ill, his representation is not evidence. As stated in *State ex rel Goldsmith v. Marion County Superior Court, Criminal Division No. 1* (1981), 275 Ind. 545, 419 N.E.2d 109, "[W]here a violation of a court order is clear on the record, 'it is not sufficient to merely deny any intention to defy the order.'" 419 N.E.2d at 113 quoting *In re Perrello* (1973), 260 Ind. 26, 30, 291 N.E.2d 698, 700–701.

## III. Contempt for Failure to pay Visitation Expenses

■ Jerry alleges the court erred in finding him in contempt for failing to pay Claudia's visitation expenses, and ordering him jailed until he complies. Jerry asserts his failure to pay the money was not contemptuous because Claudia never asked him to pay the money in advance; he also asserts the unpaid expenses were reduced to a judgment which cannot be enforced by contempt power, but must be enforced by execution on the judgment.

The court's earlier order setting the terms of visitation reads as follows:

"IT IS FURTHER ORDERED that wife have the right of reasonable visitation with the minor children of the parties at all reasonable times and places as the parties may agree provided that wife shall have the right to visit the minor children at places selected by her for a period of two consecutive weeks each year and further that husband shall advance wife's and/or children's costs and expenses for travel in an amount not to exceed $2500.00 a year."

1. However, it should be noted the courts of a state adopting the Uniform Child Custody Jurisdiction Act, Indiana Code Ann. § 31–1–11.6–1 et seq. (Burns 1980) may be unable to exercise existing jurisdiction over a person because the UCCJA requires adopting states to limit their exercise of existing subject matter jurisdiction. *See Siegel v. Siegel* (1981), 84 Ill.2d 212, 49 Ill.Dec. 298, 417 N.E.2d 1312. Further, to the extent Jerry, in his reply brief, may be attempting for the first time to raise an issue of subject matter jurisdiction, we note the UCCJA applies only to "custody determinations." A "custody determination" includes a modification of visita-

tion rights as well as custody rights, but expressly excludes a decision relating to a monetary obligation. I.C. § 31–1–11.6–2.

2. Jerry also argues "it is not contempt to disobey an order of court made without jurisdiction." Appellant's brief at 12. This argument is vitiated by the determination the dissolution court had personal jurisdiction over Jerry. Otherwise, Jerry does not dispute the propriety of a contempt determination based upon disobedience of an order to appear.

Record 37. Obviously, the provision requiring payment in advance is for Claudia's benefit, to remove any impediment to visitation caused by cash flow problems. Equally obvious is the fact the requirement to pay in advance includes the requirement Jerry reimburse Claudia for expenses incurred if she does not seek advance payment. There is no evidence Claudia sought advance payment of the expenses, but there is uncontroverted evidence that since June of 1983, she regularly sent Jerry evidence of expenses incurred which he had not paid as of the hearing date. The court was within its discretion in finding Jerry in contempt for continually refusing to pay visitation expenses Claudia incurred and of which he had continuing knowledge over a period in excess of two years.

■ Furthermore, the court's order that Jerry pay Claudia $7500.00 plus interest is enforceable through the court's contempt powers. Because the Indiana Constitution, Article 1, § 22 forbids imprisonment for debt, the court's power of contempt may not be used to enforce a dissolution decree which orders one party to pay the other a fixed sum of money, either in a lump sum, or in installments. *See State ex rel Shaunki v. Endsley* (1977), 266 Ind. 267, 362 N.E.2d 153 (a money judgment in place of a property division, payable in installments is not enforceable by contempt); *Bahre v. Bahre* (1967), 248 Ind. 656, 230 N.E.2d 411 (attorney fees awarded in dissolution proceedings not enforceable by contempt). However, an order to pay child support may be enforced by contempt, *Isler v. Isler* (1981), Ind.App., 422 N.E.2d 416, and an order to pay maintenance under Ind.Code Ann. § 31–1–11.5–9(c) (Burns 1979 Supp.) is enforceable by contempt. *Thompson v. Thompson* (1984), Ind.App., 458 N.E.2d 298. The court in *Thompson* reasoned "maintenance orders differ from ordinary judgment debts in that they are open-ended and subject to modification.

Orders to pay maintenance are thus very similar to child support orders, which have long been held enforceable by contempt notwithstanding Ind. Const. Art. 1, § 22." 458 N.E.2d at 300. Similarly, the court's visitation expense order is open-ended and subject to modification. Further, it is an order for the benefit of the child in that it assures the beneficial relationship with the non-custodial parent will not be impaired by financial impediments. *See Allee v. State* (1984), Ind.App., 462 N.E.2d 1074. Consequently, the order for visitation expenses is akin to an order for child-support or maintenance,[3] and is unlike an award of attorney fees or a property settlement award. However, Jerry's argument also encompasses the claim this particular order is not enforceable because the arrearage was reduced to a money judgment.

■ The pertinent portions of the dissolution court's judgment reads:

. . . . .

"Court being duly advised in the premises now finds that:

. . . . .

5. On June 2, 1983, Court Ordered Husband to advance travel expenses in connection with visitation of minor children by Wife in an amount not to exceed $2,500.00 per year. The term "year" means fiscal year beginning June 2, 1983, and each and every year thereafter.

6. Husband wholly failed and refused to advance, pay, or reimburse, after due notitification, pursuant to Court Order entered June 2, 1983, reasonable and necessary visitation expenses incurred by Wife for the following periods:

| | | |
|---|---|---|
| June 2, 1983 to June 1, 1984 | – | $2,500.00 |
| June 2, 1984 to June 1, 1985 | – | $2,500.00 |
| June 2, 1985 to September 23, 1985 | – | $2,500.00 |

. . . . .

3. Ind.Code Ann. § 31–1–11.5–9 has been amended since the *Thompson* case was decided. In addition to the open-ended award of maintenance which was formerly available where a spouse is physically or mentally impaired, there is a provision for rehabilitative maintenance based on the spouse's absence from the work force due to homemaking and child care responsibilities during the marriage. Maintenance under that provision is limited to a two year duration. We make no pronouncements as to whether maintenance under that provision would be enforceable by contempt.

Wherefore, based upon the above and foregoing Findings of Fact, the Court concludes that:

1. Husband has willfully failed and refused to advance, pay, or reimburse certain expenses in connection with visitation by the Wife with the minor children of the parties since June 2, 1983, in the amount of $7,500.00 pursuant to Order of this Court entered June 2, 1983.

. . . . .

Wherefore, it is Ordered, Adjudged, and Decreed that:

1. Wife, Claudia Chapman, shall have Judgment in the amount of $8,010.00 for and against Husband, Jerry M. Chapman.

. . . . .

3. Husband is in direct Contempt of this Court for failure to advance, pay, or reimburse certain travel expenses in connection with Wife's visitation with the minor children of the parties as Ordered by this Court June 2, 1983, in the amount of $7,500.00.

. . . . .

It is therefore Ordered that Husband shall be attached until such time as these sums are paid.

. . . . .

Writ of Body Attachment Ordered Issued.

Record at 267–69.

Unquestionably, the trial court entered a judgment against Jerry for an amount which included the visitation expense arrearage. Consequently, the court was enforcing the payment of a debt, the money judgment, by its contempt adjudication. In other words, although the arrearage was enforceable by contempt, once it was reduced to a judgment, it was not. The reduction of the delinquent amount to judgment impairs the trial court's use of its contempt power to enforce compliance with its prior order because the money judgment is a debt. *See Marsh v. Marsh* (1904), 162 Ind. 210, 70 N.E. 154. Therefore, this order for visitation expenses is not enforceable through the contempt power of the trial court.

### IV. Attorney Fees

Jerry argues the $4000.00 awarded to Claudia's attorney is unreasonable. Jerry asserts a portion of the attorney's time was ill spent on repetitious filings, unduly long pleadings and excessive travel. The court's award of attorney fees was made pursuant to the authority of Ind.Code Ann. § 31–1–11.5–16 (Burns 1980), and we will only reverse where the court has abused its discretion. *In re Marriage of Boren* (1985), Ind., 475 N.E.2d 690. At the contempt hearing, the attorney testified as to the amount of time he spent on the case and his hourly rate. This evidence is sufficient to support the award. *Boren,* 475 N.E.2d at 696; *Rice v. Rice* (1984), Ind. App., 460 N.E.2d 1228, 1231. Furthermore, the court had the pleadings before it, and did in fact exercise its discretion to disallow fees for approximately six (6) hours of the attorney's time.

Next, in a separate appeal consolidated with the appeal from the trial court's contempt judgment, Jerry takes issue with the award of appellate attorney fees. He argues the court erred by failing to hold an evidentiary hearing prior to awarding the fees. We agree the award of attorney fees was improper, but for another reason.

The record in this case was filed on June 19, 1986, before the order awarding appellate attorney fees was entered. At the time the Record was filed, this court obtained jurisdiction over the case, and the trial court was without jurisdiction to award appellate attorney fees. *Hudson v. Hudson* (1985), Ind.App., 484 N.E.2d 579.[4]

**4.** *Wagner v. Wagner* (1986), Ind.App., 491 N.E.2d 549, and more recently *Sheetz v. Sheetz* (1987), Ind.App., 508 N.E.2d 555 take a contrary view of this issue and would hold the trial court did not lose jurisdiction to award the appellate attorney fees because the issue is distinct from the issues on appeal. Although the majority agrees the results of the *Wagner* and *Sheetz* decisions are logical and sensible, we nevertheless are compelled by existing supreme court decisions to adhere to the *Hudson* decision.

Judgment for contempt for non-payment of visitation expenses and appellate attorney fees reversed; in all other aspects, the judgment is affirmed. Costs taxed one-half to each party.

SULLIVAN, J., concurs.

HOFFMAN, J., dissents, with separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent from the majority opinion insofar as it holds that a trial court may not enter an award for appellate attorneys' fees once the record has been filed on appeal.

IND.CODE § 31–1–11.5–16 (1984 Supp.) provides, in relevant part:

"(a) The court may from time to time order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment."

While the statute does not specifically allow the award of appellate attorneys' fees after an appeal is taken, it arguably contemplates such action. Indeed, it would be unrealistic to expect a trial court to make an award of appellate attorneys' fees before the parties express an intention to appeal. To foreclose a trial court from holding an evidentiary hearing and awarding appellate attorneys' fees after perfection of an appeal, based upon a supposed jurisdictional impediment, would abrogate the clear intent of the statute; in that, the Court of Appeals is not the proper forum for an evidentiary hearing. *See,* Indiana Constitution Art. 7 § 6 (except direct review of administrative decisions, Court of Appeals has no original jurisdiction).

I am unpersuaded by *Hudson v. Hudson* (1985), Ind.App., 484 N.E.2d 579, from whence the present procedural conflict arose. Instead, I would follow the line of cases including *Inkoff v. Inkoff* (1974), 159 Ind.App. 239, 306 N.E.2d 132; *Wagner v. Wagner* (1986), Ind.App., 491 N.E.2d 549;

and *Scheetz v. Scheetz* (1987), Ind.App., 509 N.E.2d 840. These cases recognize the trial court as the appropriate forum for such an award and note that the issue of the award of appellate attorneys' fees is separate and distinct from the issues on appeal. In examining the issue it is also useful to note that a trial court, in a dissolution proceeding, enjoys continuing jurisdiction over custody and support matters. *State ex rel. Werthman v. Superior Court of Marion* (1983), Ind., 448 N.E.2d 680, 683.

Consequently, because the majority's resolution of the issue will mislead and confuse practitioners as to when, where, and how to implement a request for appellate attorneys' fees pursuant to IND.CODE § 31–1–11.5–16, I must dissent.