In re The **MARRIAGE OF Mary Jane BAKER**, Appellant (Petitioner Below),

and

**Ronald N. Montaperto, Appellee (Respondent Below).**

No. 53A01–8910–CV–402.

Court of Appeals of Indiana, First District.

Feb. 12, 1990.

Richard S. Harrison, Cotner, Andrews, Mann & Chapman, Bloomington, for appellant.

Thomas A. Berry, Berry & Mills, Bloomington, David A. Reidy, Jr., Gosport, for appellee.

ROBERTSON, Judge.

This appeal stems from an order of the Monroe Superior Court which, for the second time, modified the terms of the decree of dissolution between the parties. Appellant Baker challenges the trial court's authority to allocate the federal income tax dependency exemption. She also contends the trial court erred in failing to find a support arrearage and in ordering an inadequate amount of support.

We affirm in part and reverse in part.

I.

In the original decree entered June 19, 1979, the dissolution court awarded the federal tax exemption for the eldest of the parties' two sons to Baker while permitting appellee Montaperto, the noncustodial parent, to claim the younger son, Mark, as a dependent. The order appealed from alters this arrangement slightly. It provides that so long as David is enrolled in college, the parties shall share the tax exemptions for their sons; thereafter, the right to claim the exemption for Mark will alternate between the parties with Montaperto claiming in tax year 1992 and Baker in 1993.

Baker maintains that Indiana trial courts no longer possess the authority to allocate the federal income tax exemption provided by Congress in 26 U.S.C. § 151. Relying upon this district's decision in *In re Marriage of Davidson* (1989), Ind.App., 540 N.E.2d 641, Baker contends that with the amendment of 26 U.S.C. § 152(e) in 1984,[1] federal law's distribution of the exemption to the custodial parent supersedes contrary state court allocations absent a written

1. Amended by the Deficit Reduction Act of 1984, Pub.L. 98–369, 98 Stat. 494.

waiver from the custodial parent or compliance with certain other narrow exceptions.

Montaperto argues that *Davidson* lacks the binding precedential effect Baker would accord it because the second district of this court explicitly approved a similar order entered after the 1984 amendment with the proviso that the noncustodial parent still must obtain the written waiver to be eligible to claim the exemption. *See Blickenstaff v. Blickenstaff* (1989), Ind. App., 539 N.E.2d 41.

*Blickenstaff* conflicts with *Davidson* insofar as *Blickenstaff* holds it is not an abuse of discretion, and hence, not reversible error, to award a post-January 1, 1985 dependency exemption. The decisions are not totally irreconcilable, however, because *Blickenstaff*, which necessarily recognizes that Indiana trial courts may consider the financial impact of an allocation of the exemption, *cf. also*, *Davidson*, 540 N.E.2d at 648, skirts the issue of whether an Indiana trial court can *effectuate* its allocation of the exemption by compelling the custodial parent to execute a written waiver meeting the requirements of § 152(e)(2) of the code. Thus, both decisions implicitly accept, apart from the matter of federal preemption, that the General Assembly has vested Indiana trial courts with both subject matter jurisdiction and statutory authorization to determine which parent should be entitled to claim the exemption, and that Indiana trial courts retain the inherent equitable power to enforce their decrees. *See, Hoyle v. Hoyle* (1985), Ind.App., 473 N.E.2d 653, 656; *Morphew v. Morphew* (1981), Ind. App., 419 N.E.2d 770 and *Corbridge v. Corbridge* (1951), 230 Ind. 201, 102 N.E.2d 764.

With this proposition, we fully agree. Where we diverge from *Davidson* is with the court's assumption that the amendment of § 152(e) necessarily leads to the conclusion that federal law divested state courts of jurisdiction to determine which party may *claim* the exemption.

■ Family law is a matter of peculiarly local concern. *De Sylva v. Ballentine* (1956), 351 U.S. 570, 580, 76 S.Ct. 974, 979, 100 L.Ed. 1415. Indeed, the whole subject of domestic relations between husband and wife belongs to the laws of the states and not to the laws of the United States. *Rose v. Rose* (1987), 481 U.S. 619, 625, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599; *McCarty v. McCarty* (1981), 453 U.S. 210, 221, 101 S.Ct. 2728, 2735, 69 L.Ed.2d 589 citing *In re Burrus* (1890), 136 U.S. 586, 593–594, 10 S.Ct. 850, 852–53, 34 L.Ed. 500. Consequently, when the courts face a potential conflict between state domestic relations law and federal law, and the question arises whether Congress, empowered by the Supremacy Clause of Art. VI., cl. 2 of the Constitution, has acted to displace state law, preemption is not to be lightly presumed.

■ The United States Supreme Court instructs that review under the Supremacy Clause is limited to a determination of whether Congress has "positively required by direct enactment" that state law be preempted. *Rose*, 481 U.S. at 625, 107 S.Ct. at 2033; *Wetmore v. Markoe* (1904), 196 U.S. 68, 77, 25 S.Ct. 172, 175, 49 L.Ed. 390. A mere conflict in words is not sufficient. State family law must do "major damage" to "clear and substantial" federal interests before the Supremacy Clause will demand that state law be overridden. *Hisquierdo v. Hisquierdo* (1979), 439 U.S. 572, 582, 99 S.Ct. 802, 808, 59 L.Ed.2d 1; *Rose*, 481 U.S. at 625, 107 S.Ct. at 2033. Analysis of the issue involves a two-fold inquiry: whether the state law as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require its nonrecognition.[2]

The section at issue does not speak directly to the power of state divorce courts to order a transfer of the deduction. It contains no express statutory directive prohibiting the exercise of state power or limiting the role of the states solely to one of

---

**2.** In most fields, the Supreme Court has refused to find federal preemption of state law in the absence of either a clear statutory proscription or a direct conflict between federal and state law. *Boyle v. United Technologies Corp.* (1988), 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442.

evaluating the financial impact of the federal enactment.[3]

The jurisdictional distinction between evaluation and effectuation finds no implicit support in the section as a whole either. Even before its amendment in 1984, § 152(e) favored the custodial parent with the exemption by general rule. What changed was the evidentiary showing necessary to rebut the presumption that the custodial parent provided over one-half of the dependent child's support. Prior to its 1984 amendment, the act provided a noncustodial parent two avenues. The parent could either demonstrate that he or she contributed at least $1200 and over one-half of the child's support or the noncustodial parent could produce a judicial decree entitling him or her to the deduction *and* establish a contribution of at least $600 toward the dependent's support. Hence,

the act expressly acknowledged the influence of state substantive law. Congressional recognition of state court power to effect claims for the deduction is retained in § 152(e)(4). The enactment continues to permit noncustodial parents divorced prior to January 1, 1985 to prove entitlement by the previous method.

The 1984 version also does not adopt an irrebuttable presumption that the custodial parent is entitled to the economic benefit of the deduction; instead, it restricts the means of proof available to the noncustodial parent to a simple written waiver executed by the custodial parent and attached to the return. The amendment therefore continues to establish the procedure for demonstrating entitlement. It does not purport to alter the manner of adjudicating the substantive domestic relations ques-

---

3. 26 U.S.C. § 152(e) provides in pertinent part:

. . . . .

(e) Support test in case of child of divorced parents, etc.—

(1) Custodial parent gets exemption.—Except as otherwise provided in this subsection, if—

(A) a child (as defined in section 151(c)(3)) receives over half of his support during the calendar year from his parents—

(i) who are divorced or legally separated under a decree of divorce or separate maintenance,

(ii) who are separated under a written separation agreement, or

(iii) who live apart at all times during the last 6 months of the calendar year, and

(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year, such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the "custodial parent").

(2) Exception where custodial parent releases claim to exemption for the year.—A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year from the noncustodial parent if—

(A) the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and

(B) the noncustodial parent attaches such written declaration to the noncustodial par-

ent's return for the taxable year beginning during such calendar year.

For purposes of this subsection, the term "noncustodial parent" means the parent who is not the custodial parent.

*   *   *   *   *   *

(4) Exception for certain pre–1985 instruments.—

(A) In general.—A child of parents described in paragraph (1) shall be treated as having received over half his support during a calendar year from the noncustodial parent if—

(i) a qualified pre–1985 instrument between the parents applicable to the taxable year beginning in such calendar year provides that the noncustodial parent shall be entitled to any deduction allowable under section 151 for such child, and

(ii) the noncustodial parent provides at least $600 for the support of such child during such calendar year.

For purposes of this subparagraph, amounts expended for the support of a child or children shall be treated as received from the noncustodial parent to the extent that such parent provided amounts for such support.

(B) Qualified pre–1985 instrument.—For purposes of this paragraph, the term "qualified pre–1985 instrument" means any decree of divorce or separate maintenance or written agreement—

(i) which is executed before January 1, 1985,

(ii) which on such date contains the provision described in subparagraph (A)(i), and

(iii) which is not modified on or after such date in a modification which expressly provides that this paragraph shall not apply to such decree or agreement.

tion. Given the sanctity accorded state court authority over the issue of child support and state court experience in allocating resources following divorce, surely Congress would have been more explicit had it intended to displace a state court's power to enforce its own equitable decrees. Accordingly, it does not appear from the text or structure of § 152(e) that Congress has "positively required by direct enactment" that state substantive law be preempted.

◼ Nonetheless, even in the absence of a statutory proscription, explicit or implicit, state law may still be preempted to the extent it actually conflicts with federal law. *Schneidewind v. ANP Pipeline Co. & ANP.* (1988), 485 U.S. 293, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316; *International Paper Co. v. Ouellette* (1987) 479 U.S. 481, 491, 107 S.Ct. 805, 811, 93 L.Ed.2d 883. Such a conflict will be found when it is impossible to comply with both state and federal law, or where state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress. *Schneidewind,* 108 S.Ct. at 1150; *California Federal Savings & Loan Ass'n v. Guerra* (1988), 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613.

◼ Compliance with § 152(e) and a state court order of allocation is not a physical impossibility. State court orders allocating the exemption can be drafted to conform with the dictates of the section, giving the IRS the objective proof it desires. A custodial spouse's failure to execute the IRS form can be enforced with an adjustment in the amount of support or by threat of civil contempt.

Likewise, continued state court adjudication of the underlying substantive issue will not transgress the goals and policies of Congress in enacting modified § 152(e). Congress created the *1967* amendment of the section with the objective of relieving the administrative difficulties involved in determining which parent meets the former section's requirements. See, S.Rep. 488, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. & Ad.News 1527, 1528. Pursuit of the same goal is apparent in the

legislative background of the 1984 amendments. See H.R.Rep. No. 98–432, Part II, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Ad.News 697, 1139–1141. Again, the need to resolve the issue of eligibility without IRS involvement in factfinding motivates the committee to recommend a provision which will reduce subjectivity and uncertainty and minimize administrative time expended on the matter. *Id.* at 1139. Nowhere in the legislative history of the provision do we find an intent to confer a personal financial benefit on one parent over the other or a purpose on the part of Congress to designate the IRS the *exclusive* arbiter of the economic benefit of the provision. In sum, the legislative history fails to evince a significant conflict between an identifiable federal policy or interest and the operation of state law.

For these reasons, we perceive it more likely that Congress, in enacting amended § 152(e), did not intend to supersede state domestic relations law. The Monroe Superior Court therefore did not abuse its discretion or commit a reversible error of law by allocating the exemption to Montaperto.

II.

Baker's second contention on appeal concerns the trial court's failure to find a support arrearage. The clerk's docket and appellee Montaperto's own testimony established that from the time his eldest son began attending college, and Montaperto became obligated to pay one-half of that son's baccalaureate expenses, including room and board, Montaperto tendered to the clerk of the court approximately $217 per month or about one-half of the amount expressly required by the most recent order of the court. Baker argues that the trial court improperly credited Montaperto for nonconforming payments; Montaperto maintains the court merely resolved an ambiguity in its order in favor of him. We agree with Baker.

When the matter of arrearage was before the court in 1989, the trial court found that Montaperto did reduce the regular monthly support payments when his son

enrolled at the University of Arizona. However, the court also found that with payments made in the latter part of 1988, the modified support payments, and the payments of college expenses, Montaperto was current in his parental obligation to support his children. Thus, it does appear that the court credited Montaperto for expenditures which did not conform to the requirements of the modified decree,[4] rather than determine that a pro rata reduction in the regular monthly support obligation was intended upon enrollment of the eldest son in college.

■ It has long been the rule of this state that a noncustodial parent may not unilaterally reduce proportionately a support order in gross for several children but must make payments of support in the manner, amount and at times required by the support order, at least until such order has been modified or set aside. *Stitle v. Stitle* (1963), 245 Ind. 168, 182, 197 N.E.2d 174; *O'Neil v. O'Neil* (1988), Ind.App., 517 N.E.2d 433, 435 *incorporated by reference,* 535 N.E.2d 523. It is presumed that the court's order contemplates support on an annualized or ongoing basis. This is true even though the order speaks in terms of some form of periodic payment. *Castro v. Castro* (1982), Ind.App., 436 N.E.2d 366, 367. Therefore, after support installments have accrued, the court is without power to reduce, annul or vacate a support order retrospectively; *Stitle,* 245 Ind. at 182, 197 N.E.2d 174, and an obligated parent will not be allowed credit for payments not conforming with the support order but in three narrow situations: (1) when the proof offered is sufficient to convince the trier of fact that the judicially required support payments have actually been made by the obligated party to the person entitled even though the payments are technically nonconforming; (2) the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the decree, and (3) where the obligated parent by agreement with the custodial parent has taken the children into his or her home, assumed custody of them, provided them with necessities, and has exercised parental control over their activities for such an extended period of time that a permanent change of custody has in effect occurred. *O'Neil,* 535 N.E.2d 523.

■ The trial court's modification of the decree became effective, prospectively, on June 1, 1989. Prior to that date, the court could properly credit Montaperto only for amounts which the evidence established Montaperto paid directly to Baker since there is no indication in the record that the parties agreed to an alternative method of payment. We find no error in that part of the trial court's finding which implicitly refers to uninsured medical costs. Baker offered her testimony but no documentary evidence of amounts expended for medical care not reimbursed by Montaperto other than correspondence with Montaperto and a typewritten summary she produced. Montaperto produced no receipts but testified he had paid most of what Baker claimed he owed. The burden of proof rested with Baker.

Montaperto also testified and the correspondence indicates that he paid directly to Baker $1080 for payments he failed to make to the clerk for *Mark's* support in February, April, June, July, August and September, 1988. Baker admits that Montaperto is entitled to credit for this amount. However, Baker contends that Montaperto never made payment toward *David's* support; the clerk's docket shows, in addition to the omitted payments cited above, that monthly payments of approximately $217 were made beginning October 6, 1987; and,

---

4. In 1983, the trial court modified the original decree to provide that Montaperto
   pay as child support the sum of $425 per month through the Office of the Clerk of Monroe County, ... Said support shall continue to be required only for the ten months the minor children are in the care of their mother and not during the two months of extended visitation in the summer.

\* \* \* \* \* \*

IT IS FURTHER ORDERED That the Decree of Dissolution of Marriage be ... modified to provide that the parties shall be jointly responsible for providing for the ... baccalaureate education of the minor children, to include room and board, books, tuition and other expenses related thereto ... and shall contribute one-half thereof.

Montaperto concedes that he intentionally reduced the monthly payment to the clerk because David had moved to campus. Montaperto makes no claim that he paid Baker anything for what he views as David's support. The evidence shows nothing to credit, despite Montaperto's assertion that he had paid what he owed. Therefore, the trial court erred in allowing him credit for amounts he admitted he did not pay.

We acknowledge that the rule requiring an obligated parent to pay in accordance with the terms of a support order until those provisions have been modified by the court may not always seem equitable to the obligated parent. But we considered the possibility of such an inequity expressly in 1980 when we reflected upon the benefits of the rule for all concerned, noting however, that an obligated parent could, with certainty, conform his or her behavior accordingly. *See, Whitman v. Whitman* (1980), Ind.App., 405 N.E.2d 608, 611.

For these reasons, we reverse the trial court's judgment insofar as it holds Montaperto owes no arrearage. Given the extent to which this matter has been litigated and in an effort to conserve judicial resources, we order, pursuant to the authority vested in this court by Ind. Appellate Rule 15(N), that the trial court's findings and judgment be corrected to reflect a support arrearage in the amount of four thousand three hundred seventy-one dollars and fifty cents ($4371.50). This sum incorporates a credit for $1080 which the parties agree was paid by Montaperto.

### III.

Baker also contends the trial court's award of support is inadequate. She focuses primarily upon the increased costs associated with rearing college-age boys and the increase in Montaperto's salary.

In determining whether the trial court abused its discretion in finding changed circumstances of a substantial and continuing nature warranting a modification of support, we do not weigh evidence nor judge credibility of witnesses but rather consider only the evidence most favorable to the judgment, together with the reasonable inferences which can be drawn therefrom. If from that viewpoint, there is substantial evidence to support a finding of the trial court, the finding will not be disturbed even though we might have reached a different conclusion had we been the triers of fact. *Lepper v. Lepper* (1987), Ind., 509 N.E.2d 818, 821.

There really is no dispute that there has been a change of circumstances affecting the need and amount of support. At the time of the modification hearing, one boy had begun college, living at the university, and the other was graduating from high school and anticipating enrollment at the same university. Indeed, there can be no dispute that college-related expenses per child amount to roughly $6000 per year, as this figure which was adopted by the trial court was proposed by Baker.[5] Hence, the dispute must center upon the trial court's determination that $1200 per child was a sufficient contribution from Montaperto toward clothing, uninsured medical, dental, optometric and orthodontic expenses, and miscellaneous household expenses.

Baker offered a budget containing the boys' estimated monthly expenses for clothing, telephone, uninsured medical expenses, insurance, gasoline, food, vacation, and the boys' share of her housing costs.[6] If the court assumed that the boys would be at school nine months of the year, then their total cost for the remaining three months, according to the wife's estimate, would be approximately $4,992, roughly $2500 per boy.

The trial court expressly noted that its award of $1200 per child was based upon the evidence which it found to be credible. Baker refused to reveal her husband's income, indicating under oath that she had no

---

5. Baker's $6,000 estimate includes tuition, housing, books, food, utilities, a tutor and miscellaneous spending.

6. Baker allocated two-thirds of her mortgage, electric and water costs to the boys. We presume these amounts represent total monthly costs.

idea what his income was but admitting she personally deleted that entry and others from their joint tax return. Hence, the trial court had only a partial picture of the lifestyle enjoyed by the boys while residing with their mother. Under these circumstances, we find nothing inappropriate in the trial court's allocation of roughly one-half the monthly cost estimated by Baker to Montaperto.

Judgment affirmed in part, reversed in part, and remanded with instructions that a judgment be entered in conformance with this opinion.

STATON, J., concurs.

RATLIFF, C.J., concurs in part and dissents in part with separate opinion.

RATLIFF, Chief Judge, concurring in part and dissenting in part.

I cannot agree with the majority opinion in its handling of the income tax exemption issue. Our decision in *In re Marriage of Davidson* (1989), Ind.App., 540 N.E.2d 641, compels an opposite result. In *Davidson*, we recognized that prior to January 1, 1985, the Federal Internal Revenue Code clearly authorized state courts to allocate the dependency exemption for income tax purposes and the non-custodial parent. I.R.C. § 152(e) automatically grants the exemption to the custodial parent unless that parent by specific written waiver for the particular tax year in question waives the exemption. *Id.* "Thus, state courts no longer possess the authority to allocate the exemption to the non-custodial parent." [citations omitted.] *Id.*

Although the previous order allocating the tax exemption was proper as a qualified pre–1985 instrument under § 152(e), when the trial court modified that order in 1989, there no longer was a qualified pre–1985 instrument. Further, the majority's reliance upon *Blickenstaff v. Blickenstaff* (1989), Ind.App., 539 N.E.2d 41, is misplaced. In *Blickenstaff*, Judge Sullivan, writing for the court, considered the trial court's statement that "based upon the economic circumstances of the parties, the husband should have the right to claim the

two younger children as dependents," and found no basis to hold the modification order to be an abuse of discretion. 539 N.E.2d at 45. However, Judge Sullivan clearly and correctly observed "[s]o long as [husband] meets the requirements of the Internal Revenue Code, his claim of the dependency exemptions is appropriate [citations omitted]." *Id.* Further, in footnote 2 in *Blickenstaff*, the court stated: "suffice it to say that the right of either party to claim a child in children as a dependent is governed by the Internal Revenue Code." *Id.* Thus, far from conflicting with *Davidson* as the majority suggests, *Blickenstaff* supports our decision in *Davidson*.

The trial court could not, under *Davidson* and I.R.C. § 152(e) allocate the dependency exemptions. Nor could it do indirectly what it could not do directly. Therefore, the majority's view that the trial court could indirectly accomplish what it is not permitted to do by compelling the execution of a waiver or by adjustment of the support order to that end is sanctioning a subterfuge and an evasion of both the holding in *Davidson* and the provisions of the federal statute.

For the reasons heretofore indicated, I dissent from the majority opinion as to the first issue. I concur as to the remaining issues.