**William P. DeMICHIELI, Appellant–
Respondent,**

v.

**Marsha Anne DeMICHIELI,
Appellee–Petitioner.**

No. 49A02–9101–CV–33.[1]

Court of Appeals of Indiana,
First District.

Jan. 29, 1992.

**1.** This case was transferred to this office by order of the Chief Judge on November 6, 1991.

Michael Cheerva, Phelps & Fara, Indianapolis, for appellant-respondent.

L. Craig Turner, Boberschmidt, Miller, O'Bryan & Turner, P.A., Indianapolis, for appellee-petitioner.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

William P. DeMichieli ("William") appeals from a judgment for Marsha Anne DeMichieli ("Marsha") on her motion to show cause and her amended motion to show cause following a January 19, 1982 final decree of dissolution and distribution of marital assets. We affirm in part, reverse in part, and remand.

## ISSUES

1. Did the trial court err in denying William's motion to dismiss and in finding William in contempt for failing to comply with the decree of dissolution?

2. Did the trial court err in enforcing the property division award which gave Marsha a twenty-five percent (25%) interest in William's Datsun dealership stock?

3. Did the trial court err in failing to credit non-conforming payments made by William?

4. Did the trial court err in ordering William to pay the costs of his children's college educations and in ordering him to pay the future educational costs of his son?

5. Did the trial court err in ordering William to pay Marsha's attorney's fees and expenses?

6. Did the trial court err in assessing prejudgment interest?

## FACTS

William and Marsha's marriage was dissolved by decree entered January 19, 1982. The couple had two children from this marriage, William Todd ("Todd"), born November 9, 1961, and Laura Ann ("Laura"), born March 28, 1966. As found in the trial court's "FINDINGS OF FACT CONCLUSIONS OF LAW AND ENTRY OF JUDGMENT," the relative paragraphs of the dissolution decree before the court upon Marsha's motion to show cause are:

"a. Paragraph 3 awarding Fifty Dollars ($50.00) per week child support for the minor child, Laura.

b. Paragraph 4 obligating father to pay the sum of Thirty-five Hundred Dollars ($3,500.00) per year [One Thousand Seven Hundred Fifty Dollars ($1,750.00) per semester] beginning with the 1982–1983 school year toward the college and edu-

cational expenses of William Todd for each year in which which William Todd is enrolled in an accredited college or university and is successfully pursuing an undergraduate degree.

c. Paragraph 5 providing that if Laura attends college the father shall pay the same as ordered for William Todd.

d. Paragraph 12 ordering father to pay over to the mother immediately Two Thousand Four Hundred Twenty–Six Dollars ($2,426.00) for education costs created between May 18, 1981, and January 19, 1982 and an additional Four Hundred Dollars ($400.00) for a total judgment of $2,826.00.

e. Paragraph 13 obligating father to tender to the Court stock certificates for the purpose of having security interests affixed thereon showing the lien of mother of said stock as a secured party, the Court having awarded mother an amount equal to twenty-five percent (25%) interest in such stock.

f. Paragraph 14 obligating father to pay to the mother Seventeen Thousand One Hundred Dollars ($17,100.00) [child support] within thirty (30) days. In the event this amount was unpaid in thirty (30) days it was to become a judgment in her favor.

g. Paragraph 15 awarding mother Twenty Thousand Dollars ($20,000.00) as her remainder interest in the equity of the marital assets dissipated by the father, said amount to be paid within thirty (30) days of the date of the decree.

h. Paragraph 16 obligating the father to pay the mother's attorney, Berton W. O'Bryan the sum of One Thousand Seven Hundred Twenty-five Dollars ($1,725.00) within thirty (30) days of the granting of the decree."

Record at 91–92.

William failed to pay the children's educational expenses as ordered in the 1982 dissolution decree. However, he did provide Todd and Laura with various cars from the car dealership in which he owns an interest, and he continued to make child support payments of $50.00 per week after Laura reached majority. Thus, William overpaid in the amount of $1,840.00.

Finding that William has failed to comply with various portions of the 1982 dissolution decree provision, the trial court pursuant to Marsha's motion to show cause entered the following judgment on October 2, 1990:

"1. Father, William P. DeMichieli, is in contempt of this Court for failure to comply with orders set out in the Decree of dissolution entered January 19, 1982.

2. The following judgments are entered against William P. DeMichieli in favor of Marsha Ann [sic] DeMichieli:

A. $1,750.00 for Todd's one semester at IUPUI with interest beginning September, 1984;

B. $3,410.00 for Laura's education ($1,750.00 with interest beginning September, 1985; $1,750.00 with interest beginning January, 1986, $1,750.00 with interest beginning September, 1986. Less credit of $1,840.00 [overpayment of child support] for a net judgment of $3,410.00.) Said $3,410.00 net judgment shall bear interest as follows: $1,660.00 beginning January, 1986 and $1,750.00 beginning September, 1986.

C. $1,826.00 for balance of judgment in Decree with interest beginning January, 1982.

D. $6,250.00 for William P. DeMichieli's share of Datsun stock with interest beginning January, 1982. [25% of $25,-000.00 plus interest].

E. $17,100.00 for child support with interest beginning February 1982.

F. $20,000.00 property division with interest beginning February 18, 1982.

G. $2,800.00 attorney's fees with interest beginning October, 1990.

3. The following judgment is entered against William P. DeMichieli in favor of Berton W. O'Bryan:

A. $1,725.00 plus interest beginning February 18, 1982.

B. $3,920.00 plus interest beginning October, 1990."

Record at 96–97. Further, the trial court ordered William to pay Fifteen Hundred Dollars ($1,500.00) for each of the three

semesters Todd had remaining to complete to obtain his degree.

It is from this judgment William appeals.

## DISCUSSION AND DECISION

■ Because the trial court, as requested, made specific findings of fact and conclusions of law, we are bound to review them under the following standard: we first must determine whether the evidence supports the findings; we then determine whether the findings support the judgment. *Porter County Board of Zoning Appeals v. Bolde* (1988), Ind.App., 530 N.E.2d 1212, 1215. The judgment of the trial court will be affirmed if we conclude that the special findings support the judgment and are not clearly erroneous. *ITT Industrial Credit Co. v. R.T.M. Development Co.* (1987), Ind. App., 512 N.E.2d 201, 203. A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made. *Porter County*, 530 N.E.2d at 1215.

### Issue One

William contends that the trial court abused its discretion in denying his motion to dismiss, arguing that contempt is an inappropriate remedy for failure to pay child support, college costs, attorney's fees, and the lump sum property division. We disagree, inasmuch as we affirm the trial court's judgment in part.

■ Money judgments are generally enforced by execution. *Bahre v. Bahre* (1967), 248 Ind. 656, 661–662, 230 N.E.2d 411, 415. Although various other collateral and auxiliary remedies are available to enforce money judgments, contempt is not one of them. *Id.* The rationale is that to permit the use of contempt for the enforcement of money judgments would violate Article 1, Section 22 of the Indiana Constitution which prohibits the imprisonment for debt. Nevertheless, this court has held that an order to pay child support, *Isler v. Isler* (1981), Ind.App., 422 N.E.2d 416, is enforceable by contempt, as is an order to pay maintenance, *Thompson v. Thompson* (1984), Ind.App., 458 N.E.2d 298, and an order to pay visitation expenses, *Chapman v. Chapman* (1987), Ind.App., 512 N.E.2d 414, *trans. denied.*

In *Chapman*, the trial court's order provided that the wife was to have a right of reasonable visitation with the minor children and husband was to advance wife's and/or children's costs and expenses for travel. Husband continually refused to pay wife's visitation expenses and was found in contempt. *Id.* at 418. We held that although the arrearage was enforceable by contempt initially, since the visitation expense order is more akin to a child support or maintenance order in that it is "open ended and subject to modification," once the order was reduced to judgment, contempt was no longer the proper remedy. *Id.* at 418–419. As Judge Shields so aptly pointed out: "The reduction of the delinquent amount to judgment impairs the trial court's use of its contempt power to enforce compliance with its prior order because the money judgment is a debt." *Id.* at 419.

■ Here, the $17,100.00 child support arrearage had been reduced to a money judgment automatically, thirty (30) days after the dissolution decree was entered, and the judgment was reaffirmed in 1990, creating a money judgment for the arrearage as early as February 20, 1982. The trial court also entered money judgments against William for the failure to pay the lump sum property division, attorney's fees, and Todd's past educational expenses. Inasmuch as the trial court's judgment states that William is in contempt for failure to comply with the orders set out in the January 19, 1982 decree of dissolution, the decision of trial court is in error because the court reduced the 1982 orders to money judgments. Therefore, we reverse and remand with instructions to the trial court to vacate its finding of contempt as to any matters that have been reduced to judgment.

### Issue Two

■ William also contends that the trial court committed an abuse of discretion by enforcing an uncertain and ambiguous

property division award. William has waived this issue by failing to raise a timely appeal.

A dissolution decree is final when entered, subject to the right of appeal. IND. CODE § 31–1–11.5–9. Further, Indiana Code section 31–1–11.5–17(a) as applicable in 1982 provides in part: "The orders as to property disposition entered pursuant to section 9 of this chapter may not be revoked or modified except in the case of fraud which ground shall be asserted within two (2) years of said order." I.C. § 31–1–11.5–17(a) was amended in 1987, and now provides that orders as to property disposition may not be revoked or modified except in the case of fraud, which shall be asserted within six (6) years of the order.

In the final decree of dissolution the court awarded Marsha "... an amount equal to twenty-five percent (25%) interest in such stock [held by William in the Datsun dealership] and [Marsha] is hereby given a security interest therein." Record at 5. The portion of the 1982 dissolution decree which disposed of the marital property was a final appealable judgment; and therefore, William has waived any arguments he may have had by failing to file a timely appeal. William creatively attempts to argue that it was Marsha's burden to appeal the 1982 decree disposing of their marital property. However, it is William who contests the judgment, not Marsha, and he has waived this issue by raising it more than two years after the final dissolution decree was entered.

*Issue Three*

Next, William argues that the trial court committed an abuse of discretion in failing to credit him for non-conforming payments. More specifically, William contends that he should have been given credit against his support obligation, for the value of the automobiles which he supplied to the children.

■ As William concedes, generally an obligated parent is not allowed credit for payments not conforming to the support order. *Kaplon v. Harris* (1991), Ind., 567 N.E.2d 1130, 1133; *In Re Marriage of Baker* (1990), Ind.App., 550 N.E.2d 82, 87.

Non-conforming payments made by the non-custodial parent for the benefit of the children are considered gratuitous or voluntary contributions and should not be considered a prepayment of the support obligation or credited against arrearages due. *Olson v. Olson* (1983), Ind.App., 445 N.E.2d 1386, 1389.

■ As we explained in *Baker*, credit will be allowed in three narrow situations:

"(1) when the proof offered is sufficient to convince the trier of fact that the judicially required support payments have actually been made by the obligated party to the person entitled even though the payments are technically non-conforming; (2) the parties have agreed to and carried out an alternative method of payment which substantially complies with the spirit of the decree, and (3) where the obligated parent by agreement has taken the children in his or her home, assumed custody of them, provided them with necessities, and has exercised parental control over their activities for such an extended period of time that a permanent change of custody has in effect occurred."

*Baker*, 550 N.E.2d at 87 (quoting *O'Neil v. O'Neil* (1988), Ind.App., 517 N.E.2d 433, *incorporated by reference*, Ind., 535 N.E.2d 523).

■ None of the exceptions set forth in *Baker* exists here. Providing the children with automobiles rather than paying the support obligation or college costs was not a conforming payment. Further, the trial court found William's testimony that he and Marsha had an agreement whereby she would waive certain payments if he provided cars for the children was not credible and was directly in conflict with Marsha's testimony. Record at 96. The question of whether an agreement between William and Marsha exists is a question of the witnesses' credibility and the weight of the evidence that is properly left to the trier of fact. We will not reweigh the evidence on appeal.

*Issue Four*

William argues that trial court abused its discretion in finding him in contempt of court for failing to pay his children's higher educational expenses. We agree with William that the contempt finding is improper, *see Issue One*, and reverse that finding.

William also argues that the trial court erred in ordering him to pay for Todd's one semester at IUPUI because Todd was not successfully pursuing an undergraduate degree. We disagree.

■ In ordering payment for higher educational expenses, the trial court must examine the facts and circumstances of each case and determine if higher education expenses are reasonable and necessary. *Martin v. Martin* (1986), Ind., 495 N.E.2d 523; *Thiele v. Thiele* (1985), Ind. App., 479 N.E.2d 1324, 1329. Further, educational support orders may continue after emancipation and are subject to modification. *Martin,* 495 N.E.2d at 525.

■ In the final decree of dissolution William was ordered to contribute $3,500.00 ($1,750.00 per semester), beginning with the 1982–1983 school year, toward Todd's college expenses as long as he was enrolled in an accredited college or university and successfully pursuing an undergraduate degree. Todd attended Oral Roberts University from August 1980 to May 1982, but did not reenter for the 1982–1983 school year. Thereafter, in September of 1984 Todd attended IUPUI for one semester. Although Todd's grade point average was below average while attending Oral Roberts University, there was no evidence that Todd was dismissed from the university or that he was on academic probation. Todd explained that part of the problem was that the registrar's office had him listed under the wrong social security number. Record at 703. Todd also testified that he left Oral Roberts University for a number of personal reasons, including having no money. *Id.* Further, no evidence was presented as to Todd's grades while attending IUPUI. We cannot say that the trial court abused its discretion in concluding that Todd met the requirements

of the prior educational expense order and in entering a money judgment against William for the one semester Todd attended IUPUI.

■ William also contends that the trial court erred in requiring him to pay $4,500.00 for Todd's future educational expenses. In determining if a parent is required to contribute to the expenses of a once discontinued but now resumed higher education, a case by case examination must be made to determine if it is reasonable and equitable. *Thiele,* 479 N.E.2d at 1329. In *Thiele,* we set out various factors which may be considered in making the determination, including:

"(1) the length of time elapsed between the interruption and resumption of the educational program; (2) the age of the child, (3) the financial ability of the parent or the parents, (4) whether the child and the parents intended to abandon permanently the program of higher education when withdrawing from it; (5) the reasonableness of the child's present desire and purpose in returning to an institution of higher learning; (6) the activities of the child, particularly in relation to employment or business during the hiatus; (7) other provisions made for the child by the parent or parents; (8) the station in life of the child and the parent or parents (9) any other facts or circumstances reasonably related to the need of the child for such education, the ability of the parent to provide such education, and the reasonableness and the equity in requiring the parent or parents to provide such educational expenses."

*Id.* 479 N.E.3d at 1329. A grant or denial of such educational expenses will not be reversed absent an abuse of discretion. *Id.* An abuse of discretion exists only when the trial court's conclusions and judgments are clearly against the logic and effect of the facts and circumstances and inferences to be drawn therefrom. *Id.* at 1329–30.

■ Reviewing the judgment and considering the facts and circumstances of this case, we cannot say the trial court abused its discretion in ordering William to

pay for Todd's remaining three semesters of higher education. From Todd's testimony the trial court reasonably could have inferred that Todd would have continued his education uninterrupted had William paid the educational expenses as ordered in the 1982 decree. There was also evidence presented that Todd worked when he was not going to school and that William has the ability to pay for Todd's future educational expenses. William incorrectly argues that the court's order constitutes an improper modification of the prior educational order; he overlooks the fact that the court's order is enforcing the 1982 dissolution decree. Moreover, William has waived this argument by not providing pertinent citation to authority or presenting a cogent argument. *See* Ind. Appellate Rule 8.3(A)(7); *Dean v. Dean* (1982), Ind.App., 439 N.E.2d 1378, 1385.

■ As for Laura's higher educational expenses, the trial court entered judgment against William for $1,750.00 for each semester Laura attended IUPUI; however, no judgment was entered against William for the higher educational expenses Laura incurred at Aristotle College, since it is not an accredited college. William contends that during the time Laura was attending IUPUI she was not pursing an undergraduate degree, but rather, a dental assistant's certificate and thus, he was not required to pay. We disagree.

Upon graduating from high school Laura attended IUPUI for three semesters. Laura testified that she planned on attending Butler University for pre-veterinary medicine; however, she had to withdraw her enrollment because she did not have the money to attend. Record at 209–210. Laura also testified that she started thinking about majoring in criminal justice at IUPUI but decided to stay with something medical. Record at 213. Then she went to Aristotle College and obtained a dental assistant certificate because the college was close to home and she could obtain a loan more easily. Record at 211–213. William now looks with hindsight and concludes that Laura never intended to pursue an undergraduate degree while attending

IUPUI since she instead obtained a dental assistant certificate; however, the record shows that Laura, like many young people today, was uncertain as to what field to pursue. The trial court could have inferred that Laura was indeed intending to pursue an undergraduate degree while attending IUPUI but for various reasons, including a lack of money, decided to enroll in the shorter program at Aristotle College. The trial court did not err in awarding the judgment against William, enforcing the order requiring William to pay the children's education expenses.

*Issue Five*

■ William argues that since the court's power of contempt was an inappropriate remedy, the trial court abused its discretion in ordering William to pay Marsha's attorney's fees and expenses based on the contempt finding. We agree.

IND.CODE § 31–1–11.5–16 provides that the court may order a party to pay a reasonable amount for the other party's costs of maintaining an action including attorney's fees. I.C. § 31–1–11.5–16. Under the statute the trial court is given broad discretion in awarding attorney fees. *Svetich v. Svetich* (1981), Ind.App., 425 N.E.2d 191, 194, *trans. denied*. Such an award will only be reversed for an abuse of discretion. *Id.* Reversal is warranted when the trial court's award is against the logic and effect of the facts and circumstances before the court. *Id.*

■ In this case, the trial court entered specific findings and conclusions. When special findings are entered pursuant to Ind. Trial Rule 52(A) "the court ... shall find the facts specially and state its conclusions thereon." T.R. 52(A). The purpose of special findings is to provide the parties and the reviewing courts with the theory on which the trial court decided the case. *In Re Marriage of Miles* (1977), 173 Ind. App. 5, 8, 362 N.E.2d 171, 174, *trans denied*. The findings' adequacy depends upon whether they are sufficient to disclose a valid basis for the legal result reached in the judgment. *Id.* When the decision rests within the discretion of the trial court, we must reverse "... if the

decision is not consistent with the findings and conclusions or if the reasons given are insufficient as a matter of law to justify the manner in which the court exercised its discretion." *Id.*

Here, the award of attorney's fees was based specifically on the trial court's finding that William was in contempt. Since contempt was an improper remedy in this case, the trial court abused its discretion in awarding the attorney's fees based specifically on the contempt finding. Therefore, we must reverse the judgment entered against William for attorney's fees in the amount of $6,720.00; $2,800.00 payable to Marsha and $3,920.00 payable directly to Marsha's attorney.

*Issue Six*

Finally, William argues that the trial court erred in determining its award of prejudgment interest. We agree with William.

■■■ Both parties cite IND.CODE section § 34–4–37–1 *et seq.* The pertinent provision, section 10(a), states:

"If the court awards prejudgment interest, the court shall determine the period during which prejudgment interest accrues. However, the period may not exceed forty-eight (48) months. Prejudgment interest begins to accrue on the *latest* of the following dates:

(1) Fifteen (15) months after the cause of action accrued.

(2) Six months after the claim is filed in the court, if IC 16–9.5–9 does not apply." (Emphasis added)

I.C. § 34–4–37–10(a). Thus, the trial court judge was required to look to the latest of two dates: fifteen (15) months after the causes of action accrued, i.e., fifteen (15) months after William was required to pay Marsha, or six months after Marsha's claim was filed, i.e., six months after the motion to show cause was filed in November of 1989. Thus, the earliest date on which prejudgment interest could begin accruing was May of 1990. However, the trial court awarded prejudgment interest back to 1982 for unpaid college costs, attorney fees, child support, and property division. The court also ordered prejudgment interest

back to 1984, 1985, and 1986 for additional unpaid college costs. Since prejudgment interest was calculated erroneously, we remand for the court to recalculate prejudgment interest.

Affirmed in part, reversed in part, and remanded.

Costs of this appeal are assessed one-half against each party.

SULLIVAN, J., concurs.

BAKER, J., concurs in part and dissents in part with separate opinion.

BAKER, Judge, concurring and dissenting.

Because I believe our court erred in its analysis in *Chapman v. Chapman* (1987), Ind.App., 512 N.E.2d 414, and because there seems to exist a grave inconsistency in the interpretation applied by the judges in our state, I am compelled to dissent to the majority's holding that a court is prohibited from using its contempt power against a delinquent parent once a child support arrearage is reduced to a judgment.

I acknowledge that today's result concerning the order of contempt is mandated by this court's earlier opinion in *Chapman.* Under this court's interpretation of Article 1, Section 22 of the Indiana Constitution, the trial court may use its contempt power to enforce a child support order, but the trial court may not imprison someone for debt. In the present case, the majority holds that the trial court properly found William was in contempt for failing to pay ordered child support and education payments. When the orders were automatically reduced to money judgments, however, the trial court erred when it continued to hold William in contempt.

I write separately because I believe *Chapman* was wrongly decided. I cannot agree that we should deny the court use of its contempt power when the court seeks to provide custodial parents with the additional security of a money judgment. To strip the court of this power only forces the court to make very difficult choices—

choices I do not believe represent good public policy. As the law exists today, either the practitioner's request or the court's own motion to reduce a support arrearage to a judgment serves as a ticket out of jail for a non-paying, non-custodial parent. This is outrageous. When a parent is held in contempt for failing to pay child support, it should be of no moment that the support arrearage is reduced to a judgment.

For this reason, I would affirm the trial court's determination that William is in contempt for failing to comply with the orders set forth in the decree of dissolution of January 19, 1982, even though the 1982 orders were reduced to money judgments. In all other respects, I concur.